**Kimberly MILLER and Roy Miller, h/w, Appellants**

v.

**Phillip C. GINSBERG, D.O. and Suburban Urological Associates, Appellees.**

**Kimberly Miller and Roy Miller, h/w, Appellees**

v.

**Howard G. Altman, M.D., Urological Associates, P.C., Phillip C. Ginsberg, D.O., Suburban Urological Associates and Simindokht Dadparvar, M.D.**

**Appeal of Phillip C. Ginsberg, D.O. and Suburban Urological Associates.**

Superior Court of Pennsylvania.

Argued Feb. 16, 2005.

Filed April 14, 2005.

Gayle Lewis, Bryn Mawr, for Miller.

Frank A. Gerolamo III, Philadelphia, for Ginsberg.

Before: GANTMAN, PANELLA, and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 Phillip Ginsberg, D.O. and Suburban Urological Associates (appellees with regard to the order of June 24, 2004, and appellants with regard to the judgment of June 25, 2004), hereinafter "defendants," and Kimberly and Roy Miller (appellants with regard to the order of June 24, 2004, and appellees with regard to the judgment of June 25, 2004), hereinafter "plaintiffs," challenge the lower court rulings in this matter. Plaintiffs claim that the judgment in their favor was proper but that the order enforcing the high/low agreement was erroneous. Defendants challenge the denial of their post-trial motions with regard to the judgment but claim that the enforcement of the high/low agreement was nevertheless correct. We affirm.

¶ 2 Plaintiffs, suing for medical malpractice and loss of consortium, instituted suit against Kimberly Miller's urologist Phillip Ginsberg, D.O. and Dr. Ginsberg's professional association, Suburban Urological Associates, in June 1998. Trial Court Opinion, 6/25/04, at 2. This suit was based on an operation on Mrs. Miller on January 18, 1996; on an attempted repair of Mrs. Miller's ureter on January 21, 1996; and on Mrs. Miller's subsequent treatment. *Id.* Mrs. Miller was born with and suffered from a congenial defect termed a double ureter. *Id.* at 3. As a result of this defect and other gynecological maladies, Mrs. Miller had undergone at least nine prior surgeries, resulting in scar tissue and adhesions to the bowel. *Id.* Plaintiffs contend that one of Mrs. Miller's ureters was negligently cut during an operation on January 18, 1996; that the failure to recognize this injury until several days later constituted negligence; and that the repair surgery was also negligently performed, resulting in bladder reflux and the loss of the right kidney. *Id.* Defendants contend that the scar tissue on Mrs. Miller's bowel from the previous surgeries made the identification of her ureter impossible (so that Dr. Ginsberg was not negligent in severing it); that the identification of the cutting of the ureter occurred within a reasonable time; and that Dr. Ginsberg was not negligent in his repair of the ureter (as his course of action and treatment was the least intrusive and most reasonable available). *Id.*

¶ 3 The first trial of this matter resulted in a verdict in favor of defendants. *Id.* at

1. The jury in the first trial found that Dr. Ginsberg was negligent, but the jury did not find that his negligence was a substantial factor in causing the injury to Mrs. Miller. *Miller v. Altman,* No. 2152 EDA 2001, 816 A.2d 341 filed 10/29/02 (unpublished memorandum). The jury did not reach the other questions of causation or the statute of limitations.[1] Trial Court Opinion, 6/25/04, at 1, 6. We ultimately reversed the verdict due to the trial judge's prejudicial criticism of plaintiffs' counsel and his extensive interruptions of plaintiffs' counsel's examination of witnesses. *See Miller.*

¶ 4 The following, second trial of this matter ended in a hung jury. Trial Court Opinion, 6/25/04, at 1. Immediately following the second trial, the third trial of this case began. *Id.*

¶ 5 Prior to the return of the jury verdict in the third trial, a high/low agreement was entered into between plaintiffs and defendants, and this agreement was placed on the record. *Id.* The agreement limited defendants' insurance company's liability to $150,000, and the agreement limited the MCare Fund's liability to $1,000,000.[2] *Id.* The jury returned with a verdict of $9,000,000 ($6,000,000 on the negligence claim and $3,000,000 for the loss of consortium claim) in favor of plaintiffs. *Id.* Additionally, the jury determined that the statute of limitations did not bar the claim since Mrs. Miller did not know or have reason to know that she suffered an injury caused by the surgeries

in question more than two years before she filed her suit. *Id.* at 6.

¶ 6 By order of June 24, 2004, the trial court denied defendants' post-trial motions challenging the verdict but granted defendants' motion to enforce the high/low agreement. The trial court modified the entry of judgment for a final amount of $1,150,000. *Id.* at 1. These appeals follow.

¶ 7 We first address the defendants' challenges to the judgment of June 25, 2004. Defendants claim that the trial judge erred with regard to the admissibility of evidence, including the admission of testimony of a plaintiff witness and the preclusion of cross-examination of the plaintiff witness; and that the trial court erred in its statute of limitations determination, as well as in its statute of limitations jury instruction. Defendants' Brief, at 4.

¶ 8 Defendants first claim that the trial judge erred with regard to the admissibility of evidence. Specifically, defendants claim that the plaintiffs' expert testimony of Dr. Schwartz was impermissible. Defendants challenge the testimony of Dr. Schwartz regarding his assertions with respect to Mrs. Miller's kidney and related conditions and risks. Defendants also challenge the admissibility of evidence regarding another of plaintiffs' experts, Dr. Shane. Defendants claim that this witness was allowed to perjure himself and that defendants were improperly precluded from cross-examining him through the use of his past testimony and three of his prior

---

1. As is required by Pa.R.C.P. 1030, defendants raised the issue of the statute of limitations in their answer and new matter. At the close of plaintiffs' case on liability in the first trial, defendants made a motion for compulsory nonsuit under Pa.R.C.P. 230.1, renewing their statute of limitations challenge. This issue was then preserved for and addressed by the trial court in the ensuing trials. Since the trial court judge, in the third trial, found a

question of fact for the jury with regard to the discovery rule exception to the statute of limitations, the issue was then presented to the jury.

2. The MCare Fund provides insurance coverage in excess of the primary insurance company's coverage in the event of a claim exceeding the primary insurer's limits.

reports from separate cases.[3] Defendants contend all of these evidentiary determinations were improper. We disagree.

¶ 9 When reviewing evidentiary determinations, our standard of review "is very narrow." *Cruz v. Northeastern Hospital,* 801 A.2d 602, 610 (Pa.Super.2002). We reverse "only for an abuse of discretion or an error of law." *Id.* Additionally, to constitute reversible error, an evidentiary ruling "must not only be erroneous, but also harmful or prejudicial to the complaining party." *Ettinger v. Triangle–Pacific Corp.,* 799 A.2d 95, 110 (Pa.Super.2002). Evidentiary rulings "which do not affect the verdict will not provide a basis for disturbing the jury's judgment." *Bryant v. Reddy,* 793 A.2d 926, 928 (Pa.Super.2002).

¶ 10 Here, the record reflects that the trial judge carefully considered defendants' concerns and arguments. Additionally, the judge reviewed the proposed testimony and the proposed cross-examination/impeachment testimony. With regard to the testimony of Dr. Schwartz, the record does not reflect, nor do defendants allege, that his testimony prejudiced the defense or improperly affected the verdict in any way. With regard to the preclusion of cross-examination/impeachment of Dr. Shane, the record reflects that the trial judge considered the introduction of evidence of separate matters involving Dr. Shane as only serving to create side-trials and confusion for the jury. Nevertheless, the trial judge allowed defendants to confront Dr. Shane before the jury at the third trial with regard to inconsistencies between his testimony at the first trial and his testimony at the second and third trials. Therefore, because the evidentiary determinations did not affect the verdict, avoided confusion within the jury, and were not prejudicial, the trial judge did not abuse his discretion in his rulings.

¶ 11 The defendants' final claims are that the trial court erred in its statute of limitations determination and in its statute of limitations jury instruction. Defendants claim that the statute of limitations clearly barred plaintiffs' action. Defendants also claim that the trial judge's jury instruction on the question of the statute of limitations was truncated and omitted reference to the plaintiffs' burden of proof. We disagree.

¶ 12 The statute of limitations requires "aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims." *Dalrymple v. Brown,* 549 Pa. 217, 701 A.2d 164, 167 (1997). The discovery rule is an exception to the requirement that a complaining party must file suit within the statutory period. The discovery rule "arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause." *Pocono Intern. Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468, 471 (1983). In such circumstances, "the limitations period does not begin to run until the discovery of the injury is reasonably possible." *Dalrymple,* 701 A.2d at 167. The party seeking to invoke the discovery rule "bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reason-

---

**3.** Defendants sought to cross-examine Dr. Shane, who they maintain perjured himself by inadvertently writing and testifying to conflicting reports for both parties to this action, by introducing his past testimony in the previous trials of this matter, as well as by introducing his testimony in three unrelated cases in which it was alleged the same conflict occurred.

able diligence." *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 249 (1995). Generally, "the point at which the complaining party should reasonably be aware that he has suffered an injury is . . . an issue of fact to be determined by the jury." *E.J.M. v. Archdiocese of Philadelphia*, 424 Pa.Super. 449, 622 A.2d 1388, 1391 (1993).

¶ 13 Here, in all trials of this matter, the trial courts determined that the discovery rule was applicable with regard to the statute of limitations, and that due to the nature of the injuries sustained by Mrs. Miller, the discovery rule question was one of fact for the jury. The court concluded that a fact question for the jury existed because, while Mrs. Miller may have known her ureter was cut at the time of the surgeries of January 1996, a jury could determine that it was not until Mrs. Miller began treatment with a new doctor in August 1996 that she became aware that her injuries were related to the surgeries (especially since Mrs. Miller testified that Dr. Ginsberg told her that her reflux problems were not related to his prior treatment).

¶ 14 In the three trials, if liability was determined by the jury with regard to Dr. Ginsberg, the jury was to then consider the question of the statute of limitations. The jury did not reach the question of the statute of limitations in the first or second trials. In the third trial, the jury determined that plaintiffs' claims were not barred by the statute of limitations because Mrs. Miller, who filed her suit in June 1998, did not know or have reason to know of her injuries until August 1996. Unlike a situation in which the injury and its cause are immediately known, here, while Mrs. Miller may have known her ureter was cut after the first surgery, the jury determined that Mrs. Miller's injuries and cause were not discovered until later treatment with a different doctor. Given the multiple surgeries Mrs. Miller had un-

der-gone and the various treatments that she was being provided, the point at which she knew or should have known that she was injured by the conduct of Dr. Ginsberg was a question of fact for the jury. The jury found in favor of Mrs. Miller, and this determination tolls the statute of limitations.

¶ 15 With regard to the jury instruction on the statute of limitations, the instruction "will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations." *Cruz*, 801 A.2d at 611. An appellate court will reverse for an improper jury instruction "only where the trial court committed a clear abuse of discretion or an error of law that controlled the outcome of the case." *Schaaf v. Kaufman*, 850 A.2d 655, 666 (Pa.Super.2004).

¶ 16 The trial judge provided a background of the statute of limitations, its exceptions, and illustrative examples of the statute of limitations and the discovery rule exception. In addition, he stated: "the question is: did the plaintiff, Kimberly Miller, know or have reason to know she suffered an injury caused by the ureter surgeries of 1/18/96 and 1/21/96 more than two years before she filed this action . . . if you answer that question yes, that she knew in over two years, she's out of court so that you don't go to the damage question." N.T., 1/27/04, at 8. Viewed in the context of the judge's entire charge to the jury on this issue, this instruction accurately reflects the law and was sufficient to guide the jury in deliberations on this point. There is no clear error of law, and the trial court did not abuse its discretion in its jury instruction on the statute of limitations.

¶ 17 We next address plaintiffs' challenges to the order of June 24, 2004. Plaintiffs claim that the trial judge abused

his discretion by enforcing the high/low agreement.[4] Plaintiffs' Brief, at 4.

¶ 18 Plaintiffs claim that the trial court erred in enforcing the high/low agreement. They claim that the MCare Fund had agreed to forgo its appellate rights, and that the agreement entered on the record does not reflect these off-record provisions. Plaintiffs claim that because there was no "meeting of the minds", and because the MCare Fund has appealed the judgment, the high/low agreement is unenforceable and void. We disagree.

■■■■ ¶ 19 When reviewing a trial court's decision to enforce a settlement agreement, "our scope of review is plenary as to the questions of law presented." *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 947 (Pa.Super.2004). We will only overturn the trial court's decision "when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous." *Id.*

■■■■ ¶ 20 A high/low agreement is considered a settlement contract. Settlement agreements "are regarded as contracts and must be considered pursuant to general rules of contract interpretation." *Friia v. Friia*, 780 A.2d 664, 668 (Pa.Super.2001). The fundamental rule in construing a contract "is to ascertain and give effect to the intention of the parties." *Id.* Thus, we "will adopt an interpretation which, under all circumstances, ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Id.* Additionally, if "the language appear-

ing in the written agreement is clear and unambiguous, the parties' intent must be discerned solely from the plain meaning of the words used." *Id.* Moreover, we "may not ignore otherwise clear language merely because one of the parties did not anticipate related complications prior to performance." *Id.*

¶ 21 The terms of the settlement agreement and the intent of the parties, as agreed to before jury selection and entered on the record in this case, are clear. The agreement, as entered on the record before the lower court, stated that the defendants' insurance company was limited to paying $150,000 (with no delay damages). N.T., 2/6/04, at 4. The agreement stated that the MCare Fund was limited to paying $1,000,000. *Id.* Further, the agreement stated that the defendants' insurance company would waive all appellate rights but that the MCare Fund would not waive any appellate rights. *Id.* The agreement reflected that should the jury return with a verdict in excess of the agreed terms, the plaintiffs' recovery would be limited.[5] We may not ignore the clear language of this agreement. As we would not have overturned the clear terms of the agreement had a lower verdict been returned, we will not now upset the clear and unambiguous terms of the settlement agreement now that a higher verdict has been returned. The agreement is therefore valid and enforceable as per its terms.

¶ 22 In conclusion, the verdict in this case was proper since the trial court did not err with regard to the admissibility of

---

4. Plaintiffs also claim that the trial court abused its discretion by denying delay damages. Our scope of review for such claims is "plenary ... we shall not reverse such an order absent an abuse of discretion." *Shay v. Flight C Helicopter Services, Inc.*, 822 A.2d 1, 20 (Pa.Super.2003). Given our standard of review and the facts and circumstances of this

matter, the trial judge's denial of delay damages did not constitute an abuse of discretion.

5. According to the high/low agreement, the plaintiffs' recovery was $50,000/$150,000 as far as the defendant's insurance company was concerned and the MCare Fund was limited to $1,000,000 in excess.

evidence or the limitation of cross-examination, and the statute of limitations did not bar the claim. Also, the order enforcing the high/low agreement was proper since the settlement agreement was valid and enforceable.

¶ 23 Judgment affirmed; order affirmed.