## Loff v. Granville

*Sal Cognetti* and *Vincent Cimini,* for plaintiff.

*Michael Domanish* and *James Beausoleil Jr.,* for defendants.

MINORA, *J.,* October 17, 2005—Presently before the court is the motion for summary judgment presented by defendants Cary Kasa, Silverbrook Anthracite Inc. and Casey Kassa Enterprises Inc. (pled as Casey Kasa Enterprises Inc.) (Kasa defendants). The plaintiffs have filed a response to said motion, and the parties argued their respective points at oral argument before the court on October 5, 2005. This matter is now ripe for adjudication.

## STATEMENT OF THE CASE

This case began with a series of events which occurred on November 9, 1999, upon Archbald Mountain, Lack-

24

awanna County, Pennsylvania. The plaintiff, Loff, and two of his friends began their afternoon by imbibing alcoholic beverages and riding their all-terrain vehicles (ATVs) in the wooded areas between Carbondale City and the Borough of Archbald. The plaintiff alleges that he and his friends traversed up Archbald Mountain in search of a shooting range when they took a wrong turn down an access road leading them to the defendants' mining site where mining equipment, trucks and trailers were placed upon a clearing in the woods. (N.T. Brad Loff, pp.108, 114-15.)[1] This mining site was owned and operated by defendants Silverbrook Anthracite Inc. and/or Casey Kasa Enterprises Inc. While upon the defendants' property the plaintiff was shot in the arm.

At all times relevant to this matter, Casey Kasa Enterprises Inc. and Silverbrook Anthracite Inc. have been incorporated under the laws of Pennsylvania. Silverbrook Anthracite has been and continues to be in the business of mining and water well drilling. Casey Kasa Enterprises Inc. has been and continues to be in the business of transporting the materials exhumed from the mining sites to the preparation plants for processing. Cary Kasa is an owner and officer of both corporations. Marie Helen Granville was a former employee of Casey Kasa Enterprises Inc. and she remained friends with Mr. Kasa after her employment ended. (N.T. Cary Kasa, p. 64.)

In the days prior to the subject incident, the property owned by the defendant corporations on Archbald Mountain was vandalized. On the morning of November 9,

---

1. The plaintiff, Brad Loff, and his companions reportedly were unarmed. (N.T. Brad Loff, p. 111.)

1999, Mr. Kasa contacted Ms. Granville to assist him in cleaning up from recent vandalism. (N.T. Cary Kasa, pp. 69-72.)[2] Mr. Kasa picked up Granville at her home in Mayfield and then drove his Toyota pickup truck to the site to survey the damage. (N.T. Cary Kasa, pp. 78-79.) Mr. Kasa kept a loaded Mossberg 500E, .410 gauge shotgun in the cab of his pickup. Once on the site, Granville and Kasa, carrying his shotgun, entered the "main" trailer which showed visible signs of vandalism. Mr. Kasa left both Ms. Granville and his .410 gauge shotgun in the main trailer while he went to another area of the site. (N.T. Cary Kasa, pp. 82-83.) After Kasa left Granville alone, the plaintiff and his friends approached the mining site upon their roaring ATVs. Ms. Granville, startled, exited the trailer, with the shotgun at her side. Ms. Granville reportedly was untrained in the use of firearms. (N.T. Marie Helen Granville, p. 39.)[3] She told the intruders that the area was restricted and to turn off their vehicles. When the intruders failed to respond to her request she raised the shotgun as a scare tactic. Allegedly, the gun accidentally discharged, sending a bullet through the plaintiff's arm. (N.T. Granville, pp. 40-44.) The plaintiff averred that the area was not posted with "no trespassing" signs. The defendants provided conflicting testimony that the area was prominently posted with signs,

---

2. Cary Kasa referred to Granville as his contact person for the Archbald Mountain area. She was designated as such and given a key to gain access after her short employment and because of her close location of her home to the mining site. (N.T. Cary Kasa, pp. 69-76.) (N.T. Marie Helen Granville, pp. 30-31.)

3. Ms. Granville presented deposition testimony that she was unaware that the gun was loaded. (N.T. Granville, pp. 37-38.)

other warnings and barriers prohibiting entrance upon the private property. (N.T. Cary Kasa, pp. 40-43.)[4]

The plaintiff commenced this action by complaint originally filed on December 12, 2000 and named as defendants Cary Kasa and Marie Helen Granville. The complaint was later amended on April 25, 2001, whereby the plaintiff joined defendants Casey Kasa Enterprises Inc. and Silverbrook Anthracite Inc. as captioned above, asserting claims of negligence and respondeat superior. On November 21, 2001, Ms. Granville entered into an agreement with the plaintiff concerning her involvement in this action, which is one of several issues raised by the defendants' motion for summary judgment that will be discussed further below.

## SUMMARY JUDGMENT STANDARD

Pennsylvania Rule of Civil Procedure 1035.2 provides that summary judgment is appropriate only in those cases where the record demonstrates that there is no genuine issue of any essential or material facts and that the moving party is entitled to judgment as a matter of law. *Bird Hill Farms Inc. v. United States Cargo & Courier Service Inc.*, 845 A.2d 900, 903 (Pa. Super. 2004); *Conway v. Tink's Spearment Café Inc.*, 01 CIV 6105 C.C.P. Lacka. Cty. (Judge Minora, August 13, 2004). In making that determination, the record must be viewed "in the light

---

4. Cary Kasa provided deposition testimony that both "No Trespassing" signs were spread throughout the subject area, posted on trees and posted on the gate off the Meridian Street exit. The words "Keep Out" were painted upon rocks along the scale area of the mining site. (N.T. Cary Kasa pp. 40-43, 56-58.)

most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Phillips v. Cricket Lighters,* 576 Pa. 644, 651, 841 A.2d 1000, 1004 (2003). Therefore, summary judgment may be entered only "[w]hen the facts are so clear that reasonable minds cannot differ," *Duquesne Light Co. v. Pennsylvania American Water Co.,* 850 A.2d 701, 703 (Pa. Super. 2004), and it is "free from doubt the moving party is entitled to judgment as a matter of law." *Savage, Sharkey, Reiser & Szulborski Eye Care Consultants v. Tanner,* 848 A.2d 150, 153 (Pa. Super. 2004); *O'Brien v. Ohio Casualty Ins. Co.,* 105 Lacka. Jurist 60, 62-63 (2004). "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law." *Downey v. Crozer-Chester Medical Center,* 817 A.2d 517, 524 (Pa. Super. 2003) quoting *Young v. PennDOT,* 560 Pa. 373, 376, 744 A.2d 1276, 1277 (2000). Let us now turn to the issues presented by the defendants' motion for summary judgment.

## DISCUSSION

The first issue centers upon an agreement entered by the plaintiff and defendant Granville on November 21, 2001. Mainly, we must determine whether the plaintiff's claims against the Kasa defendants have been terminated on account of the agreement made between the plaintiff and Granville. It is the Kasa defendants' contention that since the plaintiff has settled and released his claims with

Granville, an agent, the remaining claims asserted against the principal, Kasa defendants, have been extinguished. We disagree. The material terms of the agreement at issue are as follows:

"Brad Loff, a competent individual . . . and Marie Helen Granville, a competent adult individual . . . and her insurance carrier, Selective Insurance Company, hereinafter, "the parties," that in exchange for the payment of $100,000 made by Marie Helen Granville and her insurance carrier, Selective Insurance Company, to Brad Loff within seven days from the date of the execution of this agreement, Brad Loff will withdraw with prejudice the punitive damages claim he has asserted against Marie Helen Granville in the lawsuit filed to Lackawanna County civil docket no. 2000-CV-6166 as a result of a shooting which occurred involving Brad Loff and Marie Helen Granville on November 9, 1999, and will agree not to enforce any subsequent judgment against Marie Helen Granville which he may obtain against Marie Helen Granville in the lawsuit filed to Lackawanna County civil docket no. 2000-CV-6166 as a result of a shooting which occurred involving Brad Loff and Marie Helen Granville on November 9, 1999[.] . . . In the event the jury would return a verdict for $100,000 or in excess of $100,000, Brad Loff agrees to refrain from enforcing any subsequent judgment he may obtain against Marie Helen Granville only. . . . The parties further understand and agree that this agreement is not a release and shall not be construed as a release."

Settlement agreements are "contracts and must be considered pursuant to the general rules of contract inter-

pretation." *Miller v. Ginsberg*, 874 A.2d 93, 99 (Pa. Super. 2005); *Friia v. Friia*, 780 A.2d 664, 668 (Pa. Super. 2001). In interpreting contract language it is essential that the court ascertain and give effect to the parties' intent. *Id.* It is beyond cavil that the meaning of a clear and unambiguous contract must be determined from the four corners of the contract. *Seven Springs Farm Inc. v. Croker*, 569 Pa. 202, 801 A.2d 1212 (2002). The Superior Court stated that the court can construe the meaning of a contract only as written and may not modify the plain meaning of the words under the guise of interpretation. *Lang v. Meske*, 850 A.2d 737, 740 (Pa. Super. 2004). Furthermore, the court may not ignore the clear, plain and unambiguous language of the contract simply because one party to the agreement failed to anticipate associated complications prior to performance. *Miller, supra; Friia, supra.* The court must decide if the terms of a contract are clear and unambiguous as a question of law. *Lang v. Meske*, 850 A.2d 737 (Pa. Super. 2004).

Presently, the court is called upon to look to the language of the partial settlement agreement between the plaintiff, Loff, and defendant, Granville. It is evident from the unambiguous terms stating "[t]he parties further understand and agree that this agreement is not a release and shall not be construed as a release" to mean that the parties had no intention to release Granville from the suit. The contract directs that the punitive damages claim asserted against Granville be withdrawn and likewise, any money judgment awarded to the plaintiff in the future be unenforceable against Granville. The effect of this agreement keeps Granville as a named party in the suit, since she has not been released and the negligence

action asserted against her remains alive. Resultantly, we can clearly find that the partial settlement agreement between plaintiff and Granville has absolutely no effect upon the remaining defendants. The assertion that November 21, 2001 agreement terminates the claims brought by the plaintiff against the Kasa defendants is disingenuous, and the claims of negligence and respondeat superior against the Kasa defendants remain intact and fully actionable by the plaintiff.

The Kasa defendants insist that summary judgment is appropriate in that it is well settled law that the owner of a firearm owes no duty to protect others from a third party's misuse of the firearm. *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957). Although this declaration has some merit, it is not applicable to the underlying circumstance, nor is it the law of this case. Let us turn to the decision made during the preliminary objection stage of this litigation wherein this court established that "an owner of a weapon owes a duty to all people who might suffer harm or injury from the weapon's discharge and this includes harm inflicted by a third person if the owner knew or had reason to know that such person was likely to use the weapon in such a manner as to create an unreasonable risk of harm." *Loff v. Granville,* 00 CV 6166 C.C.P. Lacka. Cty. (Judge Terrence Nealon, April 25, 2001); citing *Frey by Frey v. Smith,* 454 Pa.Super. 242, 685 A.2d 169 (1996), *alloc. denied,* 549 Pa.701, 700 A.2d 441 (1997); see also, Restatement (Second) of Torts §308 (1965-2005). It is likewise the law of the case that in regard to the reasonable foreseeability of the risk of injury, "the fact-finder could infer that . . . the owner of the gun knew or should have known that [the co-defendant]

was likely to use the weapon in such a manner as to create an unreasonable risk of harm." *Id.* at 8. Viewing the record in the light most favorable to the non-moving party, there appears to be evidence sufficient by which the jury may infer that the defendants' actions/inactions presented a situation by which the owner of the gun knew or should have known that the gun may be used in a manner as to create an unreasonable risk of harm.[5] It is clear that there is a factual issue before us appropriate for submission to a jury. Therefore, it is improper for the court to make a factual determination regarding the element of foreseeability or any possible knowledge on the part of the Kasa defendants pertaining to the likelihood that Granville may use the gun in a manner that would create unreasonable risk of harm. It would be inappropriate at this juncture for the court to disregard the pending material factual questions by granting summary judgment. Therefore, it is denied on this basis.

There are several separate issues raised by the defendants' request for summary judgment regarding the status of the plaintiff upon the Kasa defendants' property. It is recognized that the standard of care that a landowner owes to an entrant upon his land is dependent upon that individual's status as a trespasser, licensee or business invitee. *Cresswell v. End,* 831 A.2d 673 (Pa. Super. 2003);

---

5. Deposition testimony establishes that the loaded gun was left on the table of the trailer with no instruction as to its use. (N.T. Granville, p. 37.) (N.T. Kasa, pp. 103-104.) Reportedly, there were several previous incidents involving vandalism which was one of the reasons Mr. Kasa carried the gun with him to the mining site on the day at issue. (N.T. Kasa, pp. 78-79, 81.) Mr. Kasa never provided Granville with training in the area of firearm usage. (N.T. Granville, p. 39.)

*Trude v. Martin,* 442 Pa. Super. 614, 660 A.2d 626 (1995). It is the general rule that this determination is a matter of fact proper for a jury. *Id.* In regard to the status of an individual upon another's land, the Superior Court has held that where the evidence is insufficient to support more than one conclusion, then the issue may be decided by the court. *Cresswell, supra* at 675. Presently, that is not the case as the issue of the plaintiff's status upon the mining site is contested. There has been evidence produced by both the plaintiff and defendants regarding Loff's status as a trespasser versus as a business invitee.[6] We therefore conclude that the legal status of the plaintiff upon the Kasa defendants' land is a factual issue which must be determined by the jury. Therefore, summary judgment is denied on this basis.

The final issue offered by the defendants pertains to immunity provided to landowners pursuant to the Recreational Use of Land and Water Act, 68 P.S. §477-3. We find that the defendants' arguments are frivolous and that they misapply the Act. The statute provides that a landowner owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition. See 68 P.S. §477-3.[7] As stated within the statute, the purpose of the

---

6. Deposition testimony has been presented regarding the use of Kasa defendants' property by individuals who were given keys to the main gate by Mr. Kasa for the purpose of driving their vehicles onto the property as well as ATVs. (N.T. Loff, p. 122.) The defendants provide testimony that the area was posted with signs, other warnings and barriers prohibiting entrance upon the private property, despite the plaintiff's assertions to the contrary. (N.T. Cary Kasa, pp. 40-43.)

7. "Recreational purpose" includes, but is not limited to . . . hunting, fishing, swimming, boating, camping, picnicking, hiking, pleas-

Act is to encourage landowners to make their land and water available for public recreational use. See 68 P.S. §477-1. The Supreme Court stated that the obvious purpose and legislative intent of the act is that it be applied to land devoted to recreational purposes. *Stone v. York Haven Power Company*, 561 Pa. 189, 194, 749 A.2d 452, 455 (2000). The court further stated that, "[t]he intention of the Legislature to limit the applicability of the Recreational Use of Land and Water Act [RULWA] to outdoor recreation on largely unimproved land is evident not only from the Act's stated purpose but also from the nature of the activities it listed as recreational purposes within the meaning of the statute." *Id.*

Undoubtedly, the Kasa defendants' active mining site does not qualify as a tract of land devoted to recreational use. It is arguably the site of an active business, allegedly also posted to keep out trespassers, although the defendants would like this court to believe they should be granted immunity under the Act since their property was allegedly being utilized in a recreational manner by the plaintiff. Cleary such an application of the statute disregards the contested facts of this case, and it further disregards the legislative intent. Given such contested facts, we therefore refuse to grant the Kasa defendants, specifically, Silverbrook Anthracite Inc., immunity based upon the Recreational Use of Land and Water Act. An appropriate order follows.

---

ure driving, nature study, water skiing, water sports, cave exploration and viewing or enjoying historical, archaeological, scenic, or scientific sites. 68 P.S. §477-2(3).

34

## ORDER

And now, to wit, October 17, 2005, upon consideration of the written arguments of counsel and in accordance with the preceding memorandum the following is hereby ordered and decreed that defendants Cary Kasa, Silverbrook Anthracite Inc. and Casey Kassa Enterprises Inc. (pled as Casey Kasa Enterprises Inc.) motion for summary judgment is denied.