J-A13036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.A., MINOR, BY VICTORIA ALVAREZ, GUARDIAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| ANIMAL CARE AND CONTROL TEAM OF PHILADELPHIA v. | : | No. 1533 EDA 2020 |
| BRIAN DESHIELDS | : | |

Appeal from the Order Entered June 17, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180302261

BEFORE:   BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    Filed: July 8, 2021

Appellant A.A., a Minor, by Victoria Alvarez, Guardian appeals from the Order entered in the Court of Common Pleas of Philadelphia County on June 17, 2020, denying her posttrial motion and entering judgment in favor of her in the amount of $100,000.00 following a jury trial in her personal injury action filed against Animal Care and Control Team of Philadelphia (hereinafter "ACCT") and additional defendant Brian DeShields.  Following our review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

This matter arises out of a dog attack on April 18, 2015, which occurred at Brian DeShields' apartment in Norristown, PA. On that day, A.A., who was two-and-one-half years old, was bitten by Mr. DeShields' dog, Roger,[1] and sustained serious injuries to her leg. Mr. DeShields adopted Roger from ACCT on April 17, 2015, and at that time he was advised to provide Roger with a "two week shut down" so as to allow the dog time to adapt to its new home. Mr. DeShields also was informed he could not adopt Roger if there were any children in his home unless he followed certain ACCT protocols. However, the ACCT website described Roger as playful, energetic, and family-oriented.

On April 18, 2015, Mr. DeShields asked his friend and coworker Ms. Alvarez to care for and walk Roger for him because he would be working a double shift. Ms. Alvarez brought Roger to her home where A.A., her daughter, among others, was present. Roger bit A.A. on the leg while the two were in Ms. Alvarez's apartment and violently shook her side to side. The bite caused serious bleeding and eight lacerations to A.A.'s leg. At trial, Ms. Alvarez testified the attack occurred without reason.

Ms. Alvarez sought emergency treatment for A.A. at Children's' Hospital of Philadelphia (CHOP). There, Ms. Alvarez told emergency personnel that A.A. had been playing with the dog when she accidentally sat on it. A.A. needed to be sedated, her wounds were stitched, and her leg was placed in a

---

[1] Roger's breed is referred to as both a "pit bull terrier mix" and as "pit bull" within the record.

splint. She has serious scarring and will require cosmetic surgical procedures when she is older. She continues to walk with a limp and experiences pain if she walks more than a half block. Her scars have made her the subject of teasing at her dance classes, and she often must answer inquiries about what happened to her. Six years old at the time of trial, A.A. was very self-conscious and cried frequently due to her leg's appearance.

Liability for A.A.'s injuries was contested at the eight-day jury trial. After trial commenced, Appellant and ACCT, by their respective counsel, entered into a binding high/low agreement[2] on the record before the trial court, the terms of which provided a ceiling of $700,000.00 and a low of

---

[2] A high/low agreement is "a settlement in which a defendant agrees to pay the plaintiff a minimum recovery in return for the plaintiff's agreement to accept a maximum amount regardless of the outcome of trial." *Black's Law Dictionary,* 11th ed. (2019); **see also Power v. Tomarchio,** 701 A.2d 1371 (Pa.Super. 1997) (high/low agreement defining floor and ceiling of potential recovery constitutes a settlement).

High/low agreements are considered settlement contracts. "Settlement agreements are regarded as contracts and must be considered pursuant to general rules of contract interpretation." **Friia v. Friia***, 780 A.2d 664, 668 (Pa.Super. 2001) (citation omitted). The fundamental rule in construing a contract "is to ascertain and give effect to the intention of the parties." **Id.** Thus, this Court "will adopt an interpretation which, under all circumstances, ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." **Id.** In addition, if "the language appearing in the written agreement is clear and unambiguous, the parties' intent must be discerned solely from the plain meaning of the words used." **Id.** Furthermore, we "may not ignore otherwise clear language merely because one of the parties did not anticipate related complications prior to performance." **Id***; **Miller v. Ginsberg**, 874 A.2d 93, 99 (Pa.Super. 2005).

$100,000.00. The trial court agreed that the minimum amount Appellant would receive regardless of the jury's verdict would be $100,000, and if the jury's verdict were to exceed $700,000, the most Appellant would receive would be $700,000. N.T., 2/11/20, at 31-32.

The trial court told Appellant's counsel "[t]hat sounds like a pretty good deal for your client and, at the same time, a safeguard for your client. Makes sense to me." *Id*. at 33.[3] At the conclusion of trial, the jury entered a verdict of $100,000.00 in favor of Appellant and against ACCT only.

On March 2, 2020, Appellant filed a Motion for Post Trial Relief Pursuant to Pa.R.Civ.P. 227.1. On March 11, 2020, ACCT filed a Motion to Strike Plaintiff's Post Trial Motions, in which ACCT specifically requested that the trial court strike Appellant's motion and enter judgment on the verdict. On June 17, 2020, the trial court denied Appellant's motion for a new trial on damages and entered judgment on the verdict in favor of Appellant and against Appellee ACCT in the amount of $100,000.00.

---

[3] Pursuant to Pa.R.C.P. 2039, any settlement agreement involving a minor party must be approved by the court. *See* Pa.R.C.P. 2039 (providing in relevant part: "No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." Pa.R.C.P. 2039(a)). Here, as previously stated, the trial court approved of the parties' agreement on the record.

On June 25, 2020, Appellant filed a Motion for Reconsideration of the Order denying her Motion for a New Trial and entering judgment on the verdict. The trial court denied Appellant's Motion for Reconsideration on July 15, 2020. The next day, Appellant filed a timely notice of appeal. Both Appellant and the trial court have complied with the requirements of Pa.R.A.P. 1925.

In her brief, Appellant presents the following Statement of Questions Involved:

> 1. Did the trial court err as a matter of law when it denied [Appellant's] posttrial motion seeking a new trial on damages, where Attorney Kevin McNulty, Esq., who with his firm represented ACCT, intentionally altered the verdict slip in violation of the [c]ourt's ruling regarding damages available to [Appellant] that were to be listed in one paragraph on the second page of the verdict slip?
>
> 2. Did the trial court err in denying [Appellant's] posttrial motion seeking a new trial on damages, where the court failed to instruct or direct the jury that it must consider each and every available damage separately in determining [Appellant's] damages pursuant to Pennsylvania Rules of Civil Procedure 223.3, and therefore the award of damages was against the weight of the evidence;
>
> 3. Did the trial court err in denying [Appellant's] posttrial motion seeking a new trial on damages where, after the trial court read the jury instructions to the jury, defendant's [A]ttorney McNulty asked for side bar and asked for corrections for the court to read which confused the jury, as to damages in particular, and [Appellant's] counsel objected to any mention that the jury could not consider defendant ACCT's financial ability to pay or not pay any verdict, but prior to this point [Appellant's] attorney was warned that he could not object after the court made a ruling in attorney McNulty's favor and therefore, [Appellant] was prejudiced as to objecting to the new jury charge which confused

- 5 -

the jury as to damages and the ability to award a large verdict as to damages; and

4. Did the trial court err in denying [Appellant's] posttrial motion seeking a new trial on damages, where the court allowed and accepted misconduct of [ACCT] [A]ttorney McNulty that prejudiced [Appellant] specifically including violating the Pennsylvania Rules of Civil Procedure, the discovery deadlines and discovery orders throughout the proceedings including

a) holding back key documents of defendant ACCT and not delivering them until past the discovery deadline even though defense counsel represented that all the documents were produced;

b) refusing to produce the Executive Director of ACCT for deposition until after the discovery deadline even though they agreed to produce her for deposition at an agreed upon date and time but failed to do so;

c) not timely answering additional defendant DeShields' request for admissions, and not appearing at the hearing on the motion to deem the requests admitted which therefore was submitted by DeShields' counsel as uncontested, and not filing in a timely fashion a proper motion asking the court not to deem the admissions admitted but waiting right before trial to file a motion in limine which the court granted and which prejudiced [Appellant] since [Appellant's] counsel had a right to conclude that the request for admissions were deemed admitted under the Rules because they were not answered or objected to within 30 days but then had to change strategy to also focus on liability?

Brief for Appellant at 4-6.   As Appellant's first three issues are interrelated, we will consider them together.

Initially, a trial court's denial of a motion for post-trial relief is limited:

to determining whether the trial court abused its discretion or committed an error of law. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. If the alleged mistake concerned an error of law, we will scrutinize for

- 6 -

legal error. On questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Spencer v. Johnson***, 249 A.3d 529, 549 (Pa.Super. 2021) (citation omitted).

Our review of the trial court's denial of a motion for a new trial is well-settled: "Trial courts have broad discretion to grant or deny a new trial and, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial."

***Banohashim v. R.S. Enters., LLC***, 77 A.3d 14, 22 (Pa.Super. 2013) (citation omitted and some formatting altered).

When considering a challenge to the weight of the evidence, this Court has observed the following:

> [  ] the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or give them equal weight with all the other facts is to deny justice. Furthermore, in reviewing a weight of the evidence claim we look to see if the verdict was so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative.

***Commonwealth v. Sexton***, 222 A.3d 405, 414–15 (Pa.Super. 2019) (quotation marks and citations omitted), *appeal denied,* 229 A.3d 568 (Pa. 2020).

In addition, our review of jury instructions is governed by the following principles:

> Our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse,

rather than clarify a material issue, that error in a charge will be found to be a sufficient basis for the award of a new trial. [A] charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error. [Furthermore,] in reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

***Salsgiver Communications, Inc. v. Consolidated Communications Holdings, Inc.***, 150 A.3d 957, 962-63 (Pa.Super. 2016) (citations omitted and some formatting altered).

In her first three claims, Appellant asserts counsel for ACCT, Attorney Kevin R. McNulty, intentionally altered the verdict slip when he suggested he would fix a typographical error but instead removed therefrom the words "past, present and future pain and suffering." Appellant alleges counsel's fraudulent intent is evident in the fact that the edit to be made was located on the first page of the verdict slip, and the altered language was on page two. Appellant argues that because there was no need for page two be edited, her counsel should not have been expected to proofread the entire verdict slip before it was provided to the jury. Brief for Appellant at 14-16.

Notwithstanding, Appellant admits the trial court noticed the omission, and wrote at the bottom of question four "(Pain+Suffering)." Nevertheless, Appellant speculates this action of the trial court, coupled with the instructions the trial court provided to the jury on the issue of damages, confused the jury.

Additionally, Appellant claims she was prohibited from raising any further objections following a sidebar near the conclusion of trial. Appellant concludes that Mr. McNulty's fraudulent actions vitiate the high/low agreement, and as a result, she is entitled to a new trial on damages only. *Id*. at 15-18.

Before reaching the merits of Appellant's arguments, we first must determine whether they have been preserved for appellate review. The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." *Stapas v. Giant Eagle*, *Inc.*, 650 Pa. 1, 198 A.3d 1033, 1037 (2018). Issues not raised below are waived; a party may not raise them for the first time on appeal. *See* Pa.R.A.P. 302(a).

The Pennsylvania Rules of Appellate Procedure and case law provide well-established requirements for preserving a claim for appellate review.

> It is axiomatic that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "The absence of a contemporaneous objection below constitutes a waiver" of the claim on appeal. *Commonwealth v. Powell*, [ ] 956 A.2d 406, 423 ([Pa.] 2008); *Tindall v. Friedman*, 970 A.2d 1159, 1174 (Pa. Super. 2009) ("On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated.") (citation omitted)).

*Commonwealth v. Rodriguez*, 174 A.3d 1130, 1145 (Pa.Super. 2017).

Generally, "in order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and

fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected." (citations omitted); *Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa.Super. 1995) *see also Bednarek v. Velazquez*, 830 A.2d 1267, 1270 (Pa.Super. 2003).

Typically, the failure to raise a specific and timely objection to a particular jury instruction results in waiver. *Commonwealth v. Forbes,* 867 A.2d 1268, 1274 (Pa.Super. 2005); Pa.R.A.P. 302(b) (providing that for an issue regarding the charge to the jury to be reviewable, a "[s]pecific exception shall be taken to the language or omission complained of"); *Commonwealth v. May*, 584 Pa. 640, 654, 887 A.2d 750, 758 (Pa. 2005) ("To the extent the claims would sound in trial court error, they are waived due to the absence of contemporaneous objections."). Importantly, where an appellant includes an issue in his Pa.R.A.P. 1925(b) statement, such inclusion does not "resurrect" a waived claim. *Rodriguez*, at 1145 n.6 (citing *Steiner v. Markel*, 968 A.2d 1253 (Pa. 2009)).

Herein, the following exchange pertaining to the verdict slip took place on the record:

> **THE COURT**:  Do I have the wrong verdict sheet?
> **Mr. Charles Mandracchia**:  Yes. Because when it goes to Victoria Alvarez here—I guess I said Victor.  But everything was supposed to—the only thing that was supposed to be changed was Victoria.
>     And when I asked Mr. McNulty, "Does it say the exact same thing?"

- 10 -

He said, "Yes."

**THE COURT**: Well, it doesn't now.

**Mr. Charles Mandracchia**: I guess I took his word.

**THE COURT**: I'm just saying, it doesn't say the same thing. But they're being thoroughly instructed.

**Mr**. **Charles Mandracchia**: I understand, Your Honor. It's just frustrating when you—

**THE COURT**: I can write it on there, if you want.

**Mr**. **Charles Mandracchia**: If you would do that, I'd appreciate it. Thank you.[]

---

**THE COURT**: There were a couple of different versions of the verdict sheet, just because of a typo. Like Victoria, for a couple of times, was Victor. There is no Victor Alvarez in this case. But somebody's keys were stuck or something. They kept doing Victor Alvarez.

Anyway, the last version left out pain and suffering. So I'm just going to write pain and suffering in there so there's no chance of you forgetting it.

(Brief pause.)

**THE COURT**: You don't need a separate amount for pain and suffering. It's just a reminder that in that list of noneconomic damages, pain and suffering is included. One number goes on that line.

And then, finally, I think I was telling you that with disfigurement, she's entitled to be fully and adequately compensated with regard to disfigurement for any suffering in the past, as well as in the future. . . .

N.T., 2/19/20, at 33-34.

Clearly, Appellant's counsel failed to object to the wording on or layout

of the verdict sheet after the trial court edited it.[4]   In fact, counsel for

Appellant thanked the trial court for its suggestion to write in ("pain

___

[4] Appellant admitted in her motion for post-trial relief counsel did not object to the verdict slip or to the jury charge. ***See*** "Motion of Plaintiff AA, Minor, By Victoria Alvarez, Guardian, for Post Trial Relief Pursuant to Pa.R.Civ.P. 227.1" at ¶¶ 27, 33.

+suffering") and said nothing in response to the above explanation for the handwritten notation.   Likewise, Appellant's counsel failed to ask to view the revised verdict slip thereafter.

Despite Appellant's counsel's contrary arguments to this Court, counsel obviously was aware of the handwritten edit, acquiesced to it, and certainly had an ability to have simply turned to page two to review it as well as to request the court to make appropriate changes to the verdict slip but failed to do so.

As such, we find Appellant's counsel's arguments concerning the verdict slip are waived for failure to make timely objections.  Even if we were to review those claims on the merits, we find Appellant's counsel had ample opportunity to review the entire verdict slip prior to its submission to the jury but failed to do so.

Furthermore, Appellant contends counsel was prevented from objecting to the new charge as it was read to the jury following a sidebar at which time Mr. McNulty asked that corrections be made.  Appellant states that "[p]rior to this point, [Appellant's] attorney Charles Mandracchia was warned he could not object after the court made a ruling in Attorney McNulty's favor."  Brief for Appellant at 21.  However, Appellant's counsel fails to provide any citation to the record in support of this claim. Conversely, the record belies the assertion.

Initially, the trial court provided the jury with detailed instructions on the issue of damages. N.T., 2/19/20, at 25-43. During this time, Appellant's counsel made a request to clarify the term disfigurement to include scarring:

> **THE COURT**: Are there any additions? Subtractions? Corrections?
> **Mr. Charles Mandracchia**: Yes, Your Honor.
> I have another issue regarding**--** when you said "disfigurement," it should be scarring and disfigurement on the verdict sheet.
> **THE COURT**: Ok.
> He's right. If I didn't say "scarring," scarring is a form of disfigurement. So it's like a reminder. . . .
> What you heard about in this case was scarring. That's the disfigurement, or at least part of the disfigurement. So don't forget scarring when you're evaluating this case.

*Id*. at 39-40.

Appellant's counsel had no objections thereafter, nor did counsel raise additional issues during a discussion in the robing room after counsel for ACCT expressed some concerns with the charge. *Id*. at 40-44. Also, when the trial court asked if there were "anything else we should tell the jury before they go out to deliberate?" both counsel replied "No, Your Honor." N.T. 2/29/20, at 52.

This exchange, wherein the trial court invited further expressions of concern from either counsel, clearly disproves Appellant's position that her counsel had been "warned" he could not object after the court had ruled in Attorney McNulty's favor prior to the time the jury went out to deliberate and,

instead, must wait to raise any further concerns on appeal.[5]  Therefore,

Appellant waived any issues she had with the verdict slip and the jury

instructions given by the trial court.[6]

_____

[5] At oral argument, Attorney Mandracchia referred to the following exchange in support of this position:

**Mr. Charles Mandracchia:** Your Honor, I just want to read the language that was agreed to on Question 4. And the only change that was supposed to be made—
**THE COURT:** No. there's no reason to do that.  There was something left out, so I wrote it in.
If you want to see what I wrote, we'll bring back—
**Mr. Charles Mandracchia**:  No.  I saw what you wrote.  I just wanted to know if scarring was there also on your verdict sheet and you just omitted it.
**THE COURT**:  I don't know what's on the verdict sheet.  I read whatever was there.  But I told the jury about scarring.
**Mr**. **Charles Mandracchia**:  Your Honor, I—
**THE COURT**:  It's pretty obvious that what we're talking about with disfigurement is scarring.
**Mr**. **Charles Mandracchia**:  I understand that, Your Honor.  I'm trying to follow the rules of civility to the best of my ability.
**THE COURT**: Yeah, you're unhappy with Mr. McNulty.  That's been apparent from day one.
Let me say this about all the lawyers in this case.  I really hope to se you all again back in my courtroom, everyone from Chris Mandracchia to Ms. Griffis I just hope you're not all on the same case.  All right?
But I'm not going to get into your displeasure with something that has no consequence as far as the jury verdict.  They got a good verdict sheet in the end.  That's what they walked out with.
The instruction wasn't perfect, but it was, I thought, a fine instruction.  And objections were made.  And if **anybody** has a problem with any of that, that's what appellate courts are for, so…
**Mr. Charles Mandracchia**:  Thank you, Your Honor.

N.T., 2/10/20, at 53-54.
*(Footnote Continued Next Page)*

In her final issue, Appellant maintains the trial court erred when it failed to grant her posttrial motion seeing a new trial on damages in light of numerous discovery violations on the part of ACCT. Appellant posits these violations evince opposing counsel's pattern of deception and dishonesty, the culmination of which prejudiced both Appellant and Mr. DeShields during trial.

In her Motion for Post Trial Relief, Appellant argued she was prejudiced "because, then, right at the start of trial, [Appellant] and additional defendant[] had to change their focus and put more time and emphasis on liability than was planned, which took away from the time planned for damages, which was the initial trial strategy." Motion of Plaintiff AA, Minor,

_____

Critically, this exchange occurred after the jury had exited, and the trial court was interrupted as it seemed to suggest it would bring the jury back to permit counsel to see again examine the verdict sheet. The trial court's later reference to the purpose of appellate courts was directed at counsel for all parties and does not change the fact that Attorney Mandracchia did not timely object to the jury charge prior to deliberations, even though he admitted he saw the verdict sheet.

[6] Even if these issues had been properly preserved, as previously stated, a new trial will be granted on the grounds that a verdict was against the weight of the evidence only when "the verdict is so contrary to the evidence it shocks one's sense of justice." **See Sexton, supra**. As the trial court observed, Appellant acquiesced in the high/low agreement, with $100,000 as the minimum recoverable by her, and the jury's award was within the parameters of that agreement. Thus, we find no error of law or abuse of discretion in the trial court's denial of the motion for a new trial upon finding "it [is] unlikely that [Ms. Alvarez] agreed to a number that shocked her own conscience, thus the [c]ourt views this complaint as frivolous and without merit." Trial Court Opinion, filed 11/19/20, at 4.

By Victoria Alvarez, Guardian, for Post Trial Relief Pursuant to Pa.R.Civ.P. 227.1 at ¶ 59.

Our rules of civil procedure provide the trial court "may, on motion, make an appropriate order for sanctions for discovery violations." Pa.R.C.P. 4019. This Court will not disturb a trial court's imposition of sanctions, or lack thereof, due to a party's failure to comply with a discovery order absent an abuse of discretion. *See Schweikert v. St. Luke's Hosp. of Bethlehem, Pennsylvania*, 886 A.2d 265, 268 (Pa.Super. 2005) (citation omitted). While the severity of the sanctions imposed is also within the trial court's discretion, such discretion is not unfettered:

> [B]ecause dismissal is the most severe sanction, it should be imposed only in extreme circumstances, and a trial court is required to balance the equities carefully and dismiss only where the violation of the discovery rules is willful and the opposing party has been prejudiced. Consequently, where a discovery sanction either terminates the action directly or would result in its termination by operation of law, the court must consider multiple factors balanced against the necessity of the sanction.

*Rohm & Haas Co. v. Lin*, 992 A.2d 132, 142 (Pa.Super. 2010)) (internal quotation and citations omitted).

In *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 604 Pa. 267, 270-71, 985 A.2d 1259, 1270 (Pa. 2009), the Pennsylvania Supreme Court enumerated four factors for trial and appellate courts to consider before concluding dismissal of a case constitutes a proper sanction for a discovery violation:

- 16 -

(1) the prejudice, if any, endured by the non-offending party and the ability of the opposing party to cure any prejudice; (2) the noncomplying party's willfulness or bad faith in failing to provide the requested discovery materials; (3) the importance of the excluded evidence in light of the failure to provide the discovery; and (4) the number of discovery violations by the offending party.

*Id*. (citing **Pioneer Commercial Funding Corp. v. Amer. Financial Mortg. Corp.,** 797 A.2d 269 (Pa.Super. 2002), *rev'd on other grounds*, 855 A.2d 818 (Pa. 2004)). When a discovery sanction either directly terminates the action or would result in its termination by operation of law, the first two factors assume greater significance. **City of Philadelphia**, at 286, 985 A.2d at 1271.

Following the **City of Philadelphia** decision, this Court set forth the guiding principles for review of a trial court's decision to effectively dismiss a cause of action because of a discovery violation as follows: "the nature and severity of the discovery violation, the defaulting party's willfulness or bad faith, prejudice to the opposing party, the ability to cure the prejudice; and the importance of the precluded evidence in light of the failure to comply." **Rohm & Haas**, 992 A.2d at 142 (quoting **Croydon Plastics Company, Inc. v. Lower Bucks Cooling & Heating**, 698 A.2d 625, 629 (Pa. Super. 1997)).

In her brief, Appellant alleges ACCT held back "key documents" and "refus[ed] to produce the Executive Director of ACCT for deposition" until the discovery deadline had passed and admittedly did so to prevent Appellant from obtaining an expert. **See** Brief for Appellant at 24, citing, **inter alia**, N.T., 2/7/20, at 77-82. She also states defense counsel failed to provide timely

- 17 -

answers her request for admissions and failed to appear at the hearing on the motion to deem the requests admitted. Brief for Appellants at 24.

First, Appellant's initial two subclaims arise from the oral argument pertaining to ACCT's pretrial motion to preclude Appellant's expert, and our review of the testimony therefrom reveals that Appellant has mischaracterized ACCT's statements made at that time. N.T., 2/7/20, at 79. Mr. McNulty, counsel for ACCT, explained Appellant repeatedly had stated she did not need an expert at trial, and only obtained one after ACCT did so. Mr. McNulty did not deem it to be ACCT's burden to engage an expert and admitted it sought one late in proceeding. He informed trial court that "if [it] wanted to preclude both experts, [he] think[s] that's a fair result." *Id*. at 81.

Notwithstanding the foregoing, Appellant has not demonstrated what prejudice, if any, the late disclosure caused, and we see none. Her position that this "required them to focus their rebuttal on liability more than anticipated" hardly rises to the level of prejudice needed under the aforementioned caselaw to entitle a party to a new trial.

This is especially so since any prejudice that may have arisen from pretrial discovery missteps on the part of either party was cured when both parties agreed to the terms of the high/low agreement, which the trial court accepted. Appellant has failed to present a valid basis on appeal upon which the trial court should have invalidated that binding agreement.

Therefore, we find the trial court did not abuse its discretion in failing to grant Appellant a new trial due to the alleged discovery violations.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/21