**Vincent FRIIA, Jr., Appellant,**

v.

**Mary R. FRIIA and Mary Friia Genovese and Bruno Friia, Appellees.**

Superior Court of Pennsylvania.

Argued April 25, 2001.

Filed June 22, 2001.

Joel Every, Philadelphia, for appellant.

Suzanne I. Schiller, Philadelphia, for appellee.

Before JOHNSON, STEVENS, and LALLY–GREEN, JJ.

JOHNSON, J.:

¶ 1 Vincent Friia, Jr., (Vincent) appeals the trial court's order denying his Motion to Enforce Settlement. Vincent contends that the court erred in its interpretation of the parties' settlement agreement requiring payment of certain costs out of proceeds from the sale of real property prior to distribution of the proceeds remaining. We conclude that the trial court did not err in its interpretation of the governing provision of the agreement, and we affirm the court's order denying Vincent's petition to enforce settlement.

¶ 2 This appeal arises out of lengthy and bitter litigation between family members over property rights to two residences in the Rittenhouse Square section of Philadelphia. The two properties, the first on Rittenhouse Square and the second on Delancey Place, were valued together at over four million dollars. Vincent formerly

owned both properties, but in 1991, conveyed them to an irrevocable trust in favor of his mother, Mary Friia, his sister, Mary Friia Genovese, and his brother, Bruno Friia (collectively "the Family"). Subsequently, in 1996, Vincent sought bankruptcy protection and petitioned the court for discharge of his substantial personal debts. Vincent represented that he had no personal assets and the Bankruptcy Court discharged his debts. Shortly thereafter, in 1997, Vincent commenced this action to recover the Rittenhouse Square properties.

¶ 3 This matter proceeded in the trial court before the Honorable Joseph D. O'Keefe, who superintended efforts by the parties to settle Vincent's claims. Ultimately, the parties reached a "Stipulation and Order," (sometimes hereinafter "agreement") allowing Vincent twenty percent of the value of the Delancey Place property, and all of the contents of the house at Delancey Place, which Vincent valued at over one million dollars. The parties agreed as well that Vincent would be paid a share from the sale of the property on Rittenhouse Square in the amount of $584,589.97. The agreement does not appear to condition the payment of the latter sum, but provides that certain expenses would be deducted prior to distribution of Vincent's share of the proceeds of sale from Delancey Place. Paragraph 5(c) of the "Stipulation and Order" governs the distribution to Vincent as follows:

> c. *Payment to Vincent.* Upon the sale of the Delancey Property and in compliance with this stipulation, Vincent shall receive twenty percent (20%) of the net proceeds due to seller at closing, after payment of all liens (except as to any mortgages placed upon the Delancey Property by Mary Friia, Mary Genovese or Bruno after the initiation of the litigation), encumbrances, brokerage fees, taxes *and other costs of sale.* Said proceeds shall be paid to Vincent and the law office of Joel Every & Associates as part of the closing at settlement, and shall be so reflected on the Settlement Sheet.

Stipulation and Order, 3/3/00, at 8 (attached to Brief for Appellant as Exhibit "A") (italics and bold text added).

¶ 4 In accordance with the Stipulation and Order, the Family arranged the sale of the Delancey Place property. The sale realized proceeds of two million dollars, from which counsel for the Family purported to deduct the costs specified in the Stipulation and Order. Subsequently, the Family forwarded a check to Vincent for $301,350.28, ostensibly in full payment of Vincent's twenty-percent share. Among amounts deducted was a counsel fee of $133,870.95 paid to the law firm representing the Family. Vincent's twenty-percent share of the fee amounted to approximately $27,000.00. Vincent challenged the fee, and the family responded that the charges had been incurred, substantially, in quieting title to the property following Vincent's imposition of *lis pendens* during the underlying litigation. Vincent refused to acknowledge the fee as a "cost of sale" under the foregoing provision of the Stipulation and Order and filed the Motion to Enforce Settlement now at issue. Vincent requested that the court compel the Family to forward to him the amount corresponding to his share of the counsel fee. Following review, the trial court found Vincent's objection to the fee specious and denied the Motion to Enforce Settlement. Vincent filed this appeal.

¶ 5 Vincent raises the following questions for our review:

I. Did the language of the settlement agreement (Stipulation and Order) between the parties providing for the deduction of costs of the sale of real estate

prior to allocating twenty (20%) percent of the real estate proceeds to Vincent Friia mean any amount of dollars could be deducted from the sale price without Vincent Friia's agreement or knowledge, and without an accounting and without a requirement of reasonableness?

II. Did the language of the settlement agreement (Stipulation and Order) between the parties providing for the deduction of costs of the sale of real estate prior to allocating twenty (20%) percent of the real estate proceeds to Vincent Friia mean that appellee could deduct as a cost of the sale of the real estate costs associated with the litigation leading up to the settlement and/or costs involved in complying with the settlement?

Brief for Appellant and Reproduced Record (Brief for Appellant) at 3.

¶ 6 Before proceeding to the merits of Vincent's appeal, we note that the Family has provided a counter-statement of the questions presented challenging the jurisdiction of this Court, and asserting a claim for imposition of counsel fees against Vincent. Brief for Appellee at 2. Additionally, Mary Friia Genovese and Bruno Friia have filed an "Application ... for Further Costs and Attorneys['] Fees" seeking restitution of costs incurred to defend this appeal. Family asserts that Vincent's appeal is frivolous within the meaning of Pa. R.A.P. 2744, which provides for the award of counsel fees incurred to defend an appeal. The Family bases its contention on the premise that this Court does not have jurisdiction to hear the instant appeal. Brief for Appellees at 16. Because the Family's challenge to our jurisdiction states a threshold issue of law, we commence our analysis there.

¶ 7 In support of their challenge to this Court's jurisdiction on appeal, the Family contends that Judge O'Keefe's order is not final because he merely denied Vincent's motion. Brief for Appellees at 9. The Family argues that, as a consequence, the underlying order does not comport with prerequisites for finality prescribed by Pa.R.A.P. 341, and so is interlocutory. *Id.* The Family suggests, accordingly, that we are without jurisdiction to review Vincent's appeal. *Id.* In view of the unusual provisions of the parties' Stipulation and Order effectuating the settlement, we are compelled to disagree.

> Subject to exceptions "an appeal may be taken of right from any final order of an administrative agency or lower court." Pa.R.A.P. 341(a). A final order is an order that disposes of all claims and off all parties, or is expressly defined as a final order by statute or by the ordering court. Pa.R.A.P. 341(b).

*Kulp v. Hrivnak,* 765 A.2d 796, 798 (Pa.Super.2000). Thus, to determine whether finality is achieved, "we must consider whether the practical ramification of the order will be to dispose of the case, making review appropriate." *Id.* We have concluded, accordingly, that a trial court's order denying a motion to enforce settlement typically is not final because it does not dispose of all claims and all parties; the parties retain the remedy of proceeding to trial to dispose of disputed issues. *See National Recovery Systems v. Perlman,* 367 Pa.Super. 546, 533 A.2d 152, 152–53 (1987) (quoting *Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542, 545 (1978)). We have recognized as well, however, that where the circumstances of the case make the remedy of trial inaccessible, an order refusing to enforce settlement is final as contemplated by rule 341. *See Kramer v. Schaeffer,* 751 A.2d 241, 244–45 (Pa.Super.2000) (concluding that trial court's order declining to enforce settlement agreement entered by the parties post-verdict was final because appeal was parties' only further recourse).

¶ 8 In the case at bar, the Stipulation and Order entered by Judge O'Keefe effectuating the parties' agreement of settlement, effectively removed the option of trial; it expressly dismissed the underlying action. Brief for Appellant, Exhibit "A" (Stipulation and Order, 5/3/00, at 5, ¶ 3) ("Immediately upon execution of this Stipulation, it is hereby ordered that the Complaint [at No. 003391] is dismissed with prejudice[.]"). Although, unlike the case in *Kramer*, this matter was not settled post-verdict, the court's express dismissal of the underlying action *with prejudice* made disposition at trial of the parties' disputed claim equally unattainable. Thus, we conclude, in accordance with our rationale in *Kramer*, that finality was achieved when the court denied Vincent's petition to Motion to Enforce Settlement. We conclude, accordingly, that appellate jurisdiction is established in accordance with Pa. R.A.P. 341 such as to allow our review of Vincent's appeal. Based on its assertion that appellate jurisdiction is not established, the Family contends in its third question that the Court should assess counsel fees against Vincent for the Family's costs in defending this appeal. Brief for Appellees at 16. Because we have concluded that jurisdiction is in fact established on the unusual fact pattern of this case, we decline to award counsel fees on the basis sought by the Family. We shall proceed to the merits of the questions Vincent raises.

¶ 9 We interpret both of Vincent's questions to assert that the trial court erred in its interpretation of the parties' settlement agreement. "[S]ettlement agreements are regarded as contracts and must be considered pursuant to general rules of contract interpretation." *Amerikohl Mining, Inc. v. Mt. Pleasant Twp.*, 727 A.2d 1179, 1181–82 (Pa.Cmwlth.

1999). Accordingly, "[t]he enforceability of settlement agreements is determined according to principles of contract law." *Kramer*, 751 A.2d at 245. As with all questions of law, our scope of review is plenary. *See id.* "If a trial court erred in its application of the law, [we] will correct the error." *Id.*

¶ 10 "The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties." *Amerikohl Mining*, 727 A.2d at 1182. Thus, "the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Charles D. Stein Revocable Trust v. General Felt Industries, Inc.*, 749 A.2d 978, 980 (Pa.Super.2000). "If the language appearing in the written agreement is clear and unambiguous, the parties' intent must be discerned solely from the plain meaning of the words used." *Id.* Contractual language is ambiguous only if it is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Purdy v. Purdy*, 715 A.2d 473, 475 (Pa.Super.1998). "A contract is not rendered ambiguous by the mere fact that the parties do not agree upon its proper construction." *Riccio v. American Republic Ins. Co.*, 453 Pa.Super. 364, 683 A.2d 1226, 1233 (1996). Moreover, the court may not ignore otherwise clear language merely because one of the parties did not anticipate related complications prior to performance. *See In re St. Mary Hospital*, 157 B.R. 235, 238 (E.D.Pa. 1993).

¶ 11 Upon review of the terms of the parties' settlement agreement, we find no ambiguity in the language on which the Family relied to deduct legal fees from the gross proceeds of the sale of the Delancey Place property. Paragraph 5(c) of the

agreement directed distribution to Vincent of a twenty-percent share of sale proceeds "after payment of all liens[,] . . . encumbrances, brokerage fees, taxes *and other costs of sale.*" Stipulation and Order, 3/3/00, at 8 (emphasis added). The "plain meanings" of the words the parties used, when reviewed in the context of paragraph 5(c) and the settlement agreement as a whole, support a single conclusion concerning the parties' intent.

¶ 12 The parties' use of the phrase "costs of sale" establishes their intent to limit items of expense deductible from the gross proceeds to those necessary to sell the property. Thus, the phrase "of sale" operates as a broad limitation on the purpose for which deductible expenses might be incurred. The parties' further use of the word "other" to modify costs of sale draws a comparison between the other items of potential expense listed, namely liens, encumbrances, brokerage fees, and taxes, and any additional "costs of sale" that might be incurred. Accordingly, any expense necessary to sell the property similar to the items enumerated would qualify as an "other cost[ ] of sale," and therefore, would be deductible from the gross proceeds of sale prior to distribution of Vincent's twenty-percent share.

¶ 13 The trial court, in its Rule 1925(a) opinion, recognized the relationship of the attorneys' fees at issue to the sale of the Delancey Place property. Trial Court Opinion, 12/15/00, at 9. Vincent acknowledges that attorneys' fees are "not per se unusual" for the sale of real property. Brief for Appellant at 13. Rather, he contends that the term "other costs" refers "only to the usual and customary fees charged at real estate closings[.]" He provides little discussion of this point, however, and offers no analysis of the language of the agreement to establish that such an interpretation would effectuate the inten-

tion of all parties concerned. Vincent appears, instead, to ground his argument on his personal belief and his discontent at the amount of the fees. Brief for Appellant at 12.

¶ 14 Based on the foregoing analysis of the language of paragraph 5(c), we find no support for Vincent's suggestion that the fees should be limited to those customary at a closing, or that they should be limited in amount. Rather, consistent with our foregoing analysis, we conclude that the attorneys' fees were both necessary to the sale of the property and sufficiently similar to "liens, encumbrances, brokerage fees, [and] taxes" to qualify for deduction from the proceeds of sale. Indeed the record suggests that "the legal fees were incurred in connection with clearing title, closing the sale, negotiating the Agreement of Sale, discharge of *Lis Pendens* filed by [Vincent] and several other miscellaneous charges associated with the sale." Trial Court Opinion at 9 (citing Defendant's Reply to Plaintiff's Motion to Enforce Settlement). Although we take no position on the amount of the fees, we do recognize that the work for which the fees were charged was indispensable to the sale of the Delancey Place property. The continued existence of *lis pendens,* in particular, might have rendered sale of the property impossible. Accordingly, we find no error in the trial court's denial of Vincent's Motion to Enforce Settlement.

¶ 15 Order AFFIRMED.