**Export Boxing & Crating Inc. v. Tech Met**

C.P. of Allegheny County, no. GD98-11345.

*Richard F. Andracki, Paul K. Geer, Rolf Louis Patberg* and *Jeffrey Cohen,* for plaintiffs.
*L. John Argento,* for defendant SPEDD Inc.

*Anne Paul,* for defendant Tech Met.

WETTICK JR., *J.,* December 4, 2001—The subject of this opinion and order of court is plaintiffs' motion to enforce settlement.[1]

On the eve of trial, plaintiffs agreed to accept the settlement offer of one of two joint tort-feasors. The issue raised through this petition is whether plaintiffs may furnish pro tanto releases, rather than pro rata releases, where the parties did not discuss the type of release that would be executed.

This consolidated action arises out of a fire that started in a building within an industrial park in which a tenant stored chemicals. The fire spread to other buildings occupied by other tenants, destroying these buildings. Fire equipment of more than a dozen fire companies used in fighting the fire was destroyed through exposure to chemical releases.

Defendant SPEDD Inc. owned the industrial park, including the building where the fire started. Defendant Tech Met was the tenant that stored the chemicals in connection with its business activities as a chemical miller.

The fire departments and tenants of other buildings filed lawsuits against SPEDD for failure to install a sprinkler system and for other violations of the BOCA Code and against Tech Met for failure to properly store the chemicals. The litigation also included claims by SPEDD against Tech Met for damages to the industrial park.

---

1. The facts have been developed through the petition and answer practice of Pa.R.C.P. 206.1 et seq.

On the eve of trial, the tenants and the fire companies settled with SPEDD. The settlement was placed on the record by counsel for SPEDD:

"Mr. Argento: Yes, your honor. If I may. John Argento, defense counsel for SPEDD.

"Your honor, just this morning I wish to inform the court that we've reached a settlement agreement with all of the plaintiff fire departments—actually all of the plaintiffs except for Tech Met as a plaintiff on their subrogation claim. That would include all the fire departments, Borough of Glassport, and all of the tenants. It's a joint tort-feasor release agreement.

"It includes the settlement of all claims including punitive damages, and amounts for a sum certain, but the amount is confidential. Should the court like to know what the settlement is, I would obviously have no problem telling the court." (T. 26.)

The initial communications between plaintiffs' counsel and SPEDD's counsel as to the type of release that should be provided began several days after the settlement was placed on the record. Eventually, plaintiffs' counsel furnished a pro tanto release signed by each of the plaintiffs. SPEDD's counsel refused to release the settlement funds until plaintiffs executed a pro rata release.

Through their motion to enforce a settlement, plaintiffs seek a court order compelling the release of the settlement funds. SPEDD, on the other hand, seeks a ruling that plaintiffs are not entitled to the settlement funds until plaintiffs execute a pro rata release. At oral argument on the motion, counsel for the parties stipulated that there is a binding settlement. In other words, at this time, no

attorney is taking the position that I may set aside the agreement for failure to agree upon a material term.

Each of the witnesses who participated in the settlement discussions testified that no one used the terms "pro rata release" or "pro tanto release" in any of the discussions. The only factual dispute is over whether counsel for SPEDD referred to a "standard joint tort-feasor release" or only a "joint tort-feasor release" in the settlement discussions. It does not make a difference whether or not SPEDD's counsel referred to a "standard" release. If there is not a release that is normally used where a plaintiff has settled with only one joint tort-feasor, the term "standard" is meaningless. However, if there is one type of release that is normally used, the law will presume that the parties intended for plaintiffs to execute this type of a release unless the parties explicitly agreed to use a different type of a release.

A settlement agreement is a contract governed by the general rules of contract interpretation. See *Friia v. Friia,* 780 A.2d 664, 668 (Pa. Super. 2001). Where the intentions of the parties cannot be gleaned from the language of the agreement, under general rules of contract interpretation a court should determine whether there are common expectations that would reveal the intentions of the parties.[2]

_____

2. A court is interpreting a contract if it supplies a missing term based on "a tacit agreement or a common tacit assumption or where a term can be supplied by logical deduction from agreed terms and circumstances." Restatement (Second) of Contracts §204 cmt. c. In the situation in which a court cannot find an agreement as to a particular term based on principles of contractual interpretation, "a term which is reasonable in the circumstances is supplied by the court." Restatement (Second) of Contracts §204.

In this case, this is a relatively easy task. When the parties arrived at a dollar amount that SPEDD would pay, it would have been apparent to counsel for plaintiffs that SPEDD expected a release that would eliminate SPEDD's exposure to any further claims raised in this litigation. Obviously, plaintiffs' counsel understood that plaintiffs would execute a release which would prevent plaintiffs from pursuing against SPEDD, in this or any other litigation, any claims that plaintiffs have raised against SPEDD in this litigation. Plaintiffs would also have understood that SPEDD expected that the payment it was making was the only money that SPEDD would be paying to plaintiffs, either directly or indirectly through payments made to a third party. Thus, plaintiffs would have understood that they could not pursue claims against any other parties to this litigation for which SPEDD would be ultimately liable.

Under a pro rata release, a plaintiff agrees to accept from the non-settling joint tort-feasor only whatever the non-settling tort-feasor's share of the verdict turns out to be. Under a pro tanto release, the plaintiff's recovery against the non-settling joint tort-feasors is the amount of the jury verdict less the amount of the settlement. See *Baker v. ACandS,* 562 Pa. 290, 293 n.1, 755 A.2d 664, 666 n.1 (2000). Thus, while the pro rata release, by reducing the liability of the other tort-feasor by the settling tort-feasor's proportionate share of the liability, eliminates any risk of liability stemming from the non-settling tort-feasor's contribution claim against the settling tort-feasor, the pro tanto release, by reducing the liability of the other tort-feasor only by the dollar amount paid for the release, does not eliminate the possibility of

a verdict that would result in the settling tort-feasor owing money to the non-settling tort-feasor.

The following example shows the difference between a pro rata and pro tanto release:

A passenger is injured in a two-car accident. In her complaint, the passenger alleges that both drivers are solely or partially responsible for the accident. The two drivers raise cross-claims against each other in which each contends that the other is solely or jointly liable.

Prior to trial, the plaintiff settles with driver 1 for $250,000. Because of the cross-claims, driver 1 is named as a defendant on the verdict slip. A jury renders a verdict for $1 million. It finds that each driver is 50 percent liable.

If the plaintiff signed a pro rata release, the plaintiff may not recover from driver 2 more than the percent of the total verdict for which driver 2 was found to be responsible (*i.e.,* plaintiff may recover only $500,000 from driver 2).The cross-claim is dismissed on the basis of the release under which the plaintiff agreed to reduce her claim against driver 2 to a percentage of the total verdict for which, according to the jury verdict, driver 2 is responsible.

If, instead, the plaintiff signed a pro tanto release, the plaintiff agreed only to reduce her claim against driver 2 by the amount of the verdict less the amount of the settlement. Consequently, under the fact situation described above, the plaintiff may recover $750,000 from driver 2 and driver 2 may collect $250,000 from driver 1.

In this fact situation, the reason that driver 1 is making a $250,000 payment is to avoid the possibility of a

jury verdict in which driver 1's share of the verdict exceeds $250,000. Consequently, driver 1 would never settle through a pro tanto release under which driver 1 would be required to pay to driver 2 the difference between driver 1's share of the verdict and the $250,000 payment.

The parties opposing the use of the pro rata release in the present case have not explained why SPEDD would have agreed to a release that did not protect SPEDD in the event that the jury found that SPEDD owed more than the amount of the settlement. None of the parties to the settlement would have expected SPEDD to enter into a settlement that provided almost no protection to it. See *Charles v. Giant Eagle Markets*, 513 Pa. 474, 480 n.3, 522 A.2d 1, 4 n.3 (1987), where the court stated:

"The heart of settlement, the avoidance of the exposure at trial, would be completely undermined if the settling defendant remained exposed until the final verdict is entered. It is little solace to a settling defendant to know that his agreement insulates him against exposure to additional claims asserted by a plaintiff, if he remains vulnerable to the claims of the remaining tort-feasors."

Publications discussing joint tort-feasor releases also support SPEDD's position that a pro rata release was intended. See 3 West's Pa. Forms, Civil Procedure §67.21:

"The *standard* Pennsylvania joint tort-feasor release at section 67.23 will require the plaintiff to reduce his claim against B by A's pro rata share (80 percent)." (emphasis added)

See John P. Gismondi, "Joint Tort-Feasor Releases: Is There Change in the Wind?," *Pa.L.Wkly,* September 11, 2000, at 8:

"There are generally two types of joint tort-feasor releases, pro rata and pro tanto. . . . Of the two types of releases, the pro rata is much more common since settling defendants almost uniformly insist on them so as not to leave SD [settling defendant] exposed for a contribution claim."

See John P. Gismondi, "Joint Tort-Feasor Releases: Answers to Five Common Questions," *Avoiding Pitfalls in Personal Injury Cases: Liens, Subrogation & Joint Tort-Feasor Releases,* 69, 82-83 (Pa.Tr.L.Assn. 1997):

"If, indeed, the plaintiff normally would prefer a pro tanto release, why do we almost never see such releases executed? The answer is simple. Because it increases the risk to SD [settling defendant], insurance companies almost invariably refuse to give a pro tanto release. Instead, they say that if the plaintiff wants settlement money, he will have to execute a traditional pro rata release. The risk to SD with a pro tanto release is that he remains exposed for the contribution claim by NSD [nonsettling defendant] depending on how the verdict comes in, *i.e.,* SD cannot have the piece of mind of being able to tell his claims adjustor (as they can do with a pro rata release) that, once having paid the plaintiff, no other money will have to be spent on the file. . . .

"It should be apparent now why an insurance carrier for SD will almost always insist upon a pro rata release— an insurance carrier simply does not want to take the risk of having to pay a contribution claim asserted by a NSD."

See Thomas A. Brophy, "Weighing the release in a proposed settlement," *Pa.L.Wkly,* March 17, 1997, at 12, 13:

"In conclusion, given the fact that the pro tanto release is so clearly favorable to the plaintiffs, the only reasonable explanation that such releases are not seen more often is that defendants refuse to enter into them, given the subsequent risk of exposure to defendants."

I recognize that the opinion of the Pennsylvania Supreme Court in *Baker v. ACandS, supra,* 562 Pa. at 297, 755 A.2d at 667, contains the following dicta:

"Thus, in Pennsylvania, the UCATA contemplates three separate scenarios. First, if the settlement agreement is silent, the setoff mechanism defaults to a pro tanto setoff and the non-settling defendant is entitled to have the verdict reduced by the amount of consideration paid by the settling tort-feasor."

This language is referring only to the amount by which the non-settling tort-feasors may have the verdict reduced as a result of a settlement agreement between the plaintiff and another joint tort-feasor. It is not referring to what shall be included in the written agreement between the plaintiff and the settling defendant. As I have discussed, this issue is governed by the intent of the parties. Once the agreement between the plaintiff and the settling tort-feasor is reduced to writing, the language which I have quoted provides for the plaintiff's verdict against the non-settling tort-feasor to be reduced by the amount of the settlement (as opposed to a reduction of the verdict by the settling party's allocated share of the liability) unless the written agreement provides for a pro rata setoff.

In summary, plaintiffs shall execute pro rata releases because counsel for plaintiffs would have understood that the consideration for SPEDD's substantial payment was the execution of a release agreement which eliminated the possibility that SPEDD could be compelled to pay any additional money as the result of any jury verdict entered in this litigation.

## ORDER

On December 4, 2001, upon consideration of plaintiffs' motion to enforce settlement, reinstate verdict or re-list for trial, it is hereby ordered, adjudged, and decreed that the motion of plaintiffs is denied. Plaintiffs shall execute pro rata releases.