J-A23015-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| ANDREA FIORE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL FIORE | : | |
| | : | |
| Appellant | : | No. 20 WDA 2019 |

Appeal from the Order Entered, December 18, 2018,
in the Court of Common Pleas of Erie County,
Civil Division at No(s):  No. 10559-2015.

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                    FILED NOVEMBER 08, 2019

Appellant Daniel Fiore (Husband) appeals the trial court's denial of his petition to enforce the marriage settlement agreement (MSA) against Appellee Andrea Fiore (Wife).  We affirm.

The parties reached a comprehensive and final division of all assets and debts related to their marriage when they entered into an MSA on February 5, 2018.  Notably, the parties' created their MSA by holding an on-the-record dialogue with counsel, and then used the 19-page transcript as the final memorialization of their agreement. The MSA was incorporated into, but it did not merge with, the February 12, 2018 divorce decree.

The instant dispute involves the distribution of three assets: a real estate property; a 2005 Formula 400 SS power boat; and a 2007 Nissan Titan pickup truck.  Specifically, the parties agreed that Wife would receive the real

estate if she could refinance the note encumbering it. They further agreed that they would equally divide the net proceeds from respective sales of the boat and the truck.

On September 5, 2018, Husband filed a petition to enforce the parties' MSA, claiming Wife failed to perform several of her obligations. He sought the following relief: first, to compel the sale of the jointly-owned real estate; second, to reallocate the proceeds from the sale of the parties' boat; and third, to reallocate the proceeds from the sale of the parties' truck. Husband also sought to recover the attorney fees that he expended seeking enforcement.

Following two days of testimony, the trial court denied the requested relief by order dated December 18, 2018. Regarding Wife's failure to refinance the mortgage by August 31, 2018 (and list it for sale thereafter), the court found that the parties orally agreed to an extension of time while the bank considered Wife's loan application. The specific issues involving the boat and the truck turned on whether the MSA authorized Wife to deduct from the net proceeds the expenses that she incurred to prepare the properties for sale. The court found that the costs were necessary and constituted "costs of sale" per the terms of the MSA. In reaching its decisions, the court considered the testimony of John Pursell, a mechanic who consulted with the parties regarding both the boat and the truck. Because the court found Wife did not breach the terms of the MSA, the court declined to award Husband attorney fees. Husband filed this timely appeal.

Husband raises nine issues for our review:

- 2 -

1. Whether the trial court committed an error of law and/or an abuse of discretion when it failed to enforce the marital settlement agreement as written in order to effectuate the parties' intent when they entered into it?

2. By giving wife credit for repairs whether the trial court reformed and modified the parties' agreement in her favor thereby committing an error of law and/or an abuse of discretion in contravention of 23 Pa.C.S.A. §3105?

3. Whether the trial court committed an error of law and/or an abuse of discretion when it found that the parties orally modified their marital settlement agreement when the evidence did not support such a finding?

4. Whether the trial court committed an error of law and/or an abuse of discretion when it reviewed wife's efforts to comply with the terms of the marital settlement agreement on a "good faith effort" basis when that term was not included in the parties' agreement?

5. Whether the trial court committed an error of law and/or an abuse of discretion when it allowed for the "cost of repairs" to be deducted from sales proceeds when that term was not included in the parties' agreement?

6. Whether the trial court committed an error of law and/or an abuse of discretion when it found that the truck repairs were necessary and the remaining proceeds from the sale of the pick-up truck were $2,374.73 when the evidence did not support such findings?

7. Whether the trial court committed an error of law and/or an abuse of discretion when it found that the boat repairs were necessary and totaled $11,236.26 when the evidence did not support such findings?

8. Whether the trial court committed an error of law and/or an abuse of discretion when it permitted John Pursell to testify as an expert witness in contravention of the Pennsylvania Rules of Evidence?

9. By failing to enforce the parties' marital settlement agreement whether the trial court committed an error of law and/or an abuse of discretion when it failed to find that wife breached the agreement and correspondingly failed to award counsel fees?

Husband's Brief at 6-7.

For ease of disposition, we address Father's claims as they relate to each property (the real estate, the boat, and the truck) before addressing his ancillary issues.

It is well-established that the law of contracts governs a marital settlement agreement if the agreement is not merged into a divorce decree. Bennett v. Bennett, 168 A.3d 238, 245 (Pa. Super. 2017) (citation omitted). The standard of enforceability of a contractual agreement is clear: "absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." See id. (citation omitted). An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. See Lugg v. Lugg, 64 A.3d 1109, 1110 n.1 (Pa. Super. 2013). We will not usurp the trial court's fact-finding function. Id.

Husband claims that when Wife initially failed to secure refinancing on a jointly owned real estate property, she had no choice but to list the property for sale.

The MSA provided:

In the event Wife is unable or unwilling to refinance within 100 days, [sic] list the property for sale with a multi-list realtor. Wife will make application for refinance within 30 days of today's date to remove husband's name from the

- 4 -

primary mortgage encumbering the property. Wife shall refinance the property by August 31, 2018.

MSA at 4.

Instantly, Wife applied for a loan to refinance within the designated timeframe, but the application was still pending at the time of the August 31, 2018 deadline. At the hearing, Wife claimed that she and Husband orally agreed that she would have more time to complete the refinancing process. We note here that by the second day of testimony on November 14, 2018, a bank granted her application and Wife successfully refinanced. Still, Husband argued that Wife was in breach and sought an order forcing her to sell.

In the context of marriage settlement agreements, we have said that even an agreement prohibiting non-written modification may be modified by subsequent oral agreement if the parties' conduct clearly shows the intent to waive the requirement that the amendments be made in writing. See Fina v. Fina, 737 A.2d 760, 764 (Pa. Super. 1999). To that end, an oral modification of a written contract must be proved by clear, precise and convincing evidence. Id. (citation omitted).

Instantly, the MSA anticipated that Wife's refinance application could take extra time. The MSA provided:

> There is no default if [the parties] waive any part of the agreement. [I]f [Wife] does not refinance within the time period allowed...and [Husband] say[s] that's ok, that doesn't mean [Wife] doesn't refinance totally, it just means [Husband is] okay allowing that to go a little longer.

MSA at 16.

Per the MSA, the parties explicitly anticipated that Wife's ability to secure a loan may be subject to conditions beyond her control. Wife testified that the parties entered into the very type of oral modification suggested by the MSA; i.e., if Wife bore the expense of paying the current mortgage while attempting to secure a new loan and if she was diligent in her endeavor, then Husband would not proceed with enforcement while the bank considered Wife's application. Wife also provided evidence, in the form of a message to Husband's attorney, referencing such an oral agreement.

The court found Wife's testimony to be credible. Husband argues that the court's reliance on Wife's credibility constituted an abuse of discretion. Contrary to Husband's assertion, credibility is an important factor, because testimony is evidence. And by the time the court heard the second day of testimony, Wife had successfully refinanced the property. "Since matters of credibility are for the trial court, we are bound by the court's finding of fact[.]" See Fina, 737 A.2d at 765 (citations omitted). The court concluded that such evidence was clear, precise, and convincing. We discern no abuse of discretion. Husband's claims concerning the Wife's refinancing are without merit.

Next, we consider those appellate issues linked to the sale of the parties' boat. Husband claims that Wife violated the MSA when she deducted from the net proceeds those expenses she incurred preparing the boat for sale. The MSA provided:

> In the event the boat is sold, the net proceeds shall be divided equally between the parties, that being sale prices less regular cost of sale, including commission and the outstanding debt, and the parties shall share the net proceeds equally.

MSA at 14.

The MSA referenced the outstanding debt as being "approximately $95,000." Id. at 13. The actual debt was $95,949.32. Although both parties had an obligation to sell the boat, Husband left this onerous task to Wife when Husband essentially abandoned the vessel in a parking lot after Wife was unable to meet him with the keys. Wife prepared the boat for sale by having it cleaned and detailed, services to which Husband consented. Wife found a buyer who traveled from Michigan to retrieve the boat only to discover that the boat would not start. She then incurred a bank fee when she was forced to return the prospective buyer's deposit. To determine why the boat would not run, the parties hired their mechanic, John Pursell, who, after consulting other mechanics, discovered that the boat's motor and computer were in need of repair. Mr. Pursell testified that Husband told him to repair the boat:

> Q. Did you speak to [Husband] about the repairs that needed to be done on this boat?
>
> A. Yes. When I spoke to him about [boat mechanic John] Montgomery he says, John, go ahead and do what you got to do, I respect your judgment, and that's where we left it. That was the last time I spoke to him.

N.T., 10/9/18, at 66.

The total cost of repairs and expenses were $11,236.36. The boat sold for $123,000. After deducting the outstanding debt, and the cost of repairs

and expenses, the net proceeds were $15,814.32, which the parties divided equally. The trial court determined that the term "cost of sale" encompassed the costs Wife incurred to fix the boat's motor and prepare it for sale.

In reviewing this decision, we are not without guiding precedence. In *Friia v. Friia*, 780 A.2d 664 (Pa. Super. 2001), a parties' settlement agreement specified that the spouses would split the proceeds of a sale of property "after payment of all liens, encumbrances, brokerage fees, taxes and other costs of sale." *Friia*, 780 A.2d at 668-669. There, we held:

> The parties' use of the phrase 'cost of sale' establishes their intent to limit items of expense deductible from the gross proceeds to those necessary to sell the property. Thus, the phrase 'of sale' operates as a broad limitation on the purpose for which deductible expenses might be incurred.

Id., at 669 (emphasis added).

Instantly, we similarly conclude the parties' use of the term "cost of sale" incorporates those expenses necessary to effectuate the sale of the boat. Wife contends that the boat needed to be repaired if she was going to be able to sell it while it was encumbered with debt. For support, she points to the first buyer's interest, who was set to purchase the boat until he discovered it was not seaworthy. We note further that the second, eventual buyer naturally required proof that the boat was free and clear of the bank lien. The only way to discharge the lien was to sell the boat for more than the parties' owed. To do that, Wife had to repair it.

Because Husband takes issue with the repair costs, we can assume it was Husband's view that Wife should have found a buyer who would purchase a broken boat for at least $95,949.32, or the amount of outstanding debt. But because Husband was dissatisfied with his ultimate payout (one half of $15,814.32), we can assume further that Husband thought Wife should have found a buyer who would purchase the broken boat for more than $111,763.64 (a sum that would reflect his current net proceeds). Considering that the refurbished boat sold for $123,000, we are tempted to speculate that no such buyer exists. But we need not do so, because the court believed Mr. Pursell's testimony that Husband sanctioned the repair costs. Arguably, Husband implicitly approved of Wife's decision-making when he abandoned the boat in a parking lot, leaving Wife to effectuate the sale as she saw fit.[1] Ultimately, Husband's argument fails because he explicitly agreed to the repairs in order to secure a second buyer.

Husband also seems to make hay out of the fact that not all of the expenses, totaling $11,236.36, were technical repairs relating to the motor and computer. Some expenses related to preparing and effectuating the sale. Regardless, the court determined that these expenses were costs "of sale" in that they were necessary to the sale. See Friia, supra. This determination

_____

[1] We note that Husband offered no appraisal of the boat in its unrepaired condition. Arguable, his net proceeds would have been less if Wife sold the boat in the condition he left it in the parking lot. Indeed, there may not have been any profit at all for such a sale.

was not an abuse of discretion. Husband's claims pertaining to the boat are without merit.

We turn now to those issues involving the sale of the parties' truck. Like the boat, the pertinent issue here is whether the MSA authorized Wife to deduct the costs of repair from the sale's net proceeds.

The MSA provides:

> During the marriage, the parties acquired a Nissan pickup truck, which is in joint name. The parties agree that [H]usband will deliver the pickup truck to [a designated car lot] within ten days of today's date. It will be listed for sale by [W]ife's family. They will handle the sale and title and transfer. Both parties will sign any titles necessary to effectuate the sale and transfer to a bona fide third party. Each party will receive 50 percent of the net proceeds. Net proceeds is defined as sale price less any normal and regular costs of sale. The balance is the proceeds.

MSA at 8.

Wife testified that neither party wanted the truck, which was titled in Wife's name but always driven by Husband. Wife testified she did not even know where the truck was until Husband told her it was in storage. When Wife retrieved the vehicle in order to sell it, she discovered that it was also in poor condition. The seats were torn up, there was garbage and Husband's personal effects in the cab, the front headlight was broken and the front bumper was dented from striking a deer. The rear bumper and tailgate were also damaged. Wife was aware that Husband struck a deer, but she was unaware that he never bothered to repair the truck.

At the hearing, Husband admitted that he received a $3,000 insurance check for the accident involving the deer, which he pocketed instead of repairing the truck. Apart from the cosmetic state of the vehicle, Mr. Pursell testified it was unsafe to drive or sell. The truck was no longer registered, inspected, or insured. The brakes did not work. Mr. Pursell determined that total cost of completely repairing the truck would be around $4,000, but such a cost would prohibit any tentative return on the sale. Nevertheless, some repairs were made; the truck was detailed to make it presentable so that it could be sold at auction. Wife expended $2,500 on the body from the deer accident and at least another $370 to detail the car. Initially, the truck received no bids at auction. The truck was evidently placed in the "as is" lane, and an eventual buyer came forward who needed the truck to tow a four-wheeler he just purchased. Remarkably, the truck sold for $5,600. After deducting the cost of repairs, there was a profit of $2,373.73.

Husband argument is twofold, which we discuss in turn. First, Husband argues that because Wife seemingly forgot to seek admission of the repair bill, the court could not consider the costs. Although Wife did not ask to admit the repair bill (which had been marked as an exhibit), both Mr. Pursell and Wife testified in detail about the expenses incurred to repair the truck. The court was within its discretion to deny Husband's petition based upon their testimony alone.

In his second argument, like he claimed with the boat, Husband maintains that the cost of repairs should not have been considered "costs of

sale." His argument fails here too. The court determined that the cost of repairs were necessary to sell the truck. The record supports this conclusion.

The parties foresaw costs necessary to effectuate the sale of the truck. Husband clearly possessed personal knowledge, which he evidently did not reveal to Wife when they negotiated the MSA, that the truck was in need of significant repair. Although Wife was aware he damaged the truck in 2015, she was unaware that the truck remained damaged and certainly unaware that Husband received $3,000 from the insurance company. While Husband may have contemplated that truck would be sold "as is," ample testimony revealed that that was not an option. Even the repaired truck received no bids at auction. The truck only sold because a buyer happened to need a truck for one specific job. We conclude that Husband's issues regarding the truck are similarly meritless.

In addition to his primary contentions involving the house, the boat, and the truck, Husband raises several ancillary issues that are readily disposable. First, Husband argues that the trial court utilized the wrong legal standard in reaching its decision. Specifically, Husband takes issue with the court's finding that Wife acted in good faith. The court cited Giant Food Stores, LLC v. THF Silver Spring DEV., L.P., 959 A.2d 438, 447-448 (Pa. Super. 2008) for the proposition that every contract imposes a duty of good faith and fair dealing on the parties in the performance of the contract. We have also observed the duty of each party to act in good faith in the context of marriage settlement

agreements. See, e.g., Stamerro v. Stamerro, 889 A.2d 1251, 1259 (Pa. Super. 2005).

Here, the trial court's observation that Wife operated in good faith was entirely appropriate to its decision. However, the case did not turn on this finding. The trial court specifically found that the parties orally modified the MSA to allow Wife an extension to secure refinancing; the court further determined that the costs to prepare the boat and truck for sale were necessary "costs of sale" per the language in the MSA. As we discussed above, none of those determinations constituted abuses of discretion.

Next, Husband alleges the court improperly admitted expert testimony from Mr. Pursell, who was not a qualified expert per Pa.R.E. 702. Although the court referred to Mr. Pursell as an expert in passing when addressing the order of the witnesses, it is clear that the court did not consider Pursell's testimony to be "expert" as contemplated by the Pennsylvania Rules of Evidence. Moreover, Husband objects only to that part of Mr. Pursell's testimony regarding whether the truck sold for a reasonable price and whether the boat could be sold before it was repaired. On these points, Mr. Pursell's opinion is irrelevant. The first sale of the boat fell through, because it needed repairs. Similarly the truck, even after it was repaired, still failed to get a single bid at auction; it only sold by happenstance. From these facts alone, the court could properly infer that the repairs were necessary to effectuate the sale of both items.

In his a final issue, Husband seeks attorney fees. Because the court determined that Wife did not breach the MSA, the court determined that no fees were due. That logic stands.

Based on the forgoing reasons, we conclude that the trial court did not abuse its discretion when it denied Husband's petition to enforce the parties' MSA.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/2019