J-A15032-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FREUNDLICH & LITTMAN, LLC AND GREGORY CREED LITTMAN, ESQUIRE, | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| EDWARD T. FEIERSTEIN, BRUCE CHASAN, ESQUIRE AND THE LAW OFFICES OF BRUCE J. CHASAN, LLC | : : : : : | No. 498 EDA 2020 |
| APPEAL OF: BRUCE CHASAN, ESQUIRE AND THE LAW OFFICES OF BRUCE J. CHASAN, LLC | : : : | |

Appeal from the Order Entered January 14, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 150401569

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

DISSENTING MEMORANDUM BY BOWES, J.:     **FILED DECEMBER 14, 2021**

I respectfully dissent.  To my mind, the trial court's November 21, 2019 bench order was final and, thus, appealable because it precluded a trial on the merits.  Thus, I would order Appellants to *praecipe* the clerk of courts to effectuate the entry of the bench order on the docket, proceed to the merits of the issues, and reverse the holding below.

The Majority correctly observes that the bench order was never placed on the docket pursuant to Pa.R.A.P. 301(a).  It is unfortunate, however, that the Majority opts to quash this appeal in lieu of directing Chasan to file a *praecipe* for the entry of a written order.  **See** Pa.R.A.P. 301(d) ("[T]he clerk

of courts shall, on *praecipe* of any party . . . forthwith prepare, sign, and enter an appropriate order, judgment, or final decree in the docket, evidencing any action from which an appeal lies[.]"). This Court regularly permits such ministerial correction rather than employing the harsh result of quashal.[1] **See Yon v. Yarus**, 700 A.2d 545, 546 (Pa.Super. 1997) (observing that the jurisdictional requirements set forth pursuant to Rule 301 may be perfected even while an appeal is pending).

Assuming, *arguendo*, that the bench order was properly entered on the docket in this fashion, I would turn the focus of our inquiry to the discrete issue of justiciability, *i.e.*, whether the order is sufficiently final to permit an appeal.[2] While my learned colleagues conclude that an order simultaneously revising and enforcing a settlement agreement is interlocutory, I must disagree due to the specific circumstances of this case.

The central issue at the November 21, 2019 hearing that led to the issuance of the bench order was the viability of the Settlement Agreement. Under its terms, Bruce Chasan, Esquire and The Law Offices of Bruce J. Chasan, LLC (collectively, "Chasan") were to withdraw a pending appeal in a related defamation case. That withdrawal never took place and the appeal

---

[1] **See also**, **e.g.**, **McCormick v. Northeastern Bank of Pennsylvania**, 561 A.2d 328, 330 n.1 (Pa. 1989) (excusing the lack of a final order under Pa.R.A.P. 301 in the interest of "judicial economy" and regarding "as done that which ought to have been done" to reach the merits of the case).
[2] Although Chasan misidentified the appealable order, we may correct the caption. **See In Interest of N.C.**, 171 A.3d 275, 278 n.1 (Pa.Super. 2017).

proceeded to a decision on the merits in favor of Gregory Creed Littman, Esquire, and Freundlich & Littman, LLC (collectively, "Littman"). In addition to undermining one of the key points of consideration, this non-performance also affected Littman's concomitant obligations under the accord:

> The issue . . . is that the settlement funds — there was a $25,000 total. The reason there were two payments, because $5,000 was coming from [Littman] and the plaintiffs, and $20,000 was coming from the insurance company in the defamation case. That money is gone.
>
> The insurance company in the defamation case brought by [Chasan] against [Littman] has no interest in paying $20,000 for a case that they had to litigate for five years and ultimately won[.]

*Id*. at 19. Although Littman no longer wanted to pay, it still wanted to secure a written release from Chasan as a hedge against future litigation.

Chasan took the position that the terms of the Settlement Agreement should be strictly enforced or that the matter should be listed for trial: "[E]ither the case has to be relisted and [Littman] have to put on their case and we defend it on the merits and we seek to get a jury verdict in our favor to exonerate my client or they can . . . perform under the settlement." N.T. Trial, 11/21/19, at 23. Furthermore, Chasan argued that the source of the settlement funds was not a part of the parties' negotiations: "They agreed they were going to pay the money. However they get the funds, that's up to them." *Id*. at 25.

The trial court opted to preserve the contract by *sua sponte* revision, reasoning that Chasan's noncompliance should cancel out the monies to be

- 3 -

paid by Littman: "My order is as follows: I retain jurisdiction to enforce the settlement. I find that because [Chasan] did not comply with discontinuing the defamation action, the plaintiffs are not required to make the payments that they said they were going to make." *Id*. at 28. In so doing, the trial court also necessarily concluded the parties continued to be bound by the reimagined Settlement Agreement and declined to relist the matter for trial.

Based on the foregoing discussion, I would hold that the bench order was "final" insofar as it disposed of "all claims and of all parties". Pa.R.A.P. 341(b)(1). "[T]o determine whether finality is achieved, we must consider whether the practical ramification of the order will be to dispose of the case, making review appropriate." *Friia v. Friia*, 780 A.2d 664, 667 (Pa.Super. 2001) (cleaned up). The gravamen of the trial court's holding is that the decision to settle the case is inextricably binding, even if the precise terms of the settlement have been fundamentally altered. Moreover, its holding subsumed all parties and claims in the above-captioned case. By choosing to enforce its revised Settlement Agreement, the trial court has extinguished any potential litigation between the parties. Our precedent indicates that such a holding is final and appealable. *See Friia*, *supra* at 667-68 (holding that an order respecting the enforcement of a settlement agreement is "final" where

"the circumstances of the case make the remedy of trial inaccessible").[3] Hence, Chasan's appeal is jurisdictionally proper.

Having determined finality, I would turn to the merits and grant relief based upon Chasan's fourth issue, which asserts the trial court erred in imposing its recast Settlement Agreement upon the parties. **See** Chasan's brief at 48-50. I am guided by the following legal principles. "Our standard of review of a trial court's grant or denial of a motion to enforce a settlement agreement is plenary, as the challenge is to the trial court's conclusion of law." **Casey v. GAF Corp.**, 828 A.2d 362, 367 (Pa. 2003). "The enforceability of settlement agreements is governed by principles of contract law." **Pennsbury Village Associates, LLC v. Aaron McIntyre**, 11 A.3d 906, 914 (Pa. 2011). "As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject matter, of the agreement." **Mazzella v. Koken**, 739 A.2d 531, 536 (Pa. 1999). Thus, Pennsylvania courts will only "enforce a settlement agreement if all its material terms have been agreed upon by the parties." **Pennsbury**, **supra** at 914 (citing **Century Inn, Inc. v. Century Inn Realty**, 516 A.2d 765, 767 (Pa.Super. 1986)).

---

[3] The appeal in **Friia v. Friia**, 780 A.2d 664, 667-68 (Pa.Super. 2001) concerned an order refusing to enforce a settlement agreement, as opposed to an order of enforcement. I do not believe this distinction undermines the general principle expressed in **Friia**, *i.e.*, that a trial court order concerning a settlement agreement that precludes litigants from their day in court is final.

In response to the competing arguments of the parties concerning the validity of the Settlement Agreement, the trial court redrafted the contractual terms as described above. **See** N.T. Hearing, 11/21/19, at 26 ("Suppose I cancel those two things out; you don't have to pay, he can no longer perform what he was supposed to perform."). Furthermore, it announced its intention to impose sanctions if the parties did not comply. **Id**. at 29. This was clear legal error. The trial court may **not** unilaterally revise the terms of a settlement agreement, particularly where those revisions conflict with the terms originally contemplated by the parties and are supported by the threat of sanctions for non-compliance. **See Century Inn**, **supra** at 769 ("The court may not . . . order the parties to execute the court's own agreement, or face a contempt citation, where the agreement differs from the terms of the settlement."); **Johnston v. Johnston**, 499 A.2d 1074, 1078 (Pa.Super. 1985) ("[T]he trial court cannot compel appellants, as part of their settlement, to sign a written contract which is not in all respects consistent with the agreement reached during trial and placed upon the record by the parties and their attorneys."). Indeed, the withdrawal of the defamation appeal and the payment of the settlement funds stand out as the two central pillars of consideration undergirding the parties' original accord.

Furthermore, I emphasize that **both** parties are in ongoing breach of their obligations. While Littman complains that it should not be required to pay, the terms of the Settlement Agreement predicated Chasan's withdrawal

of the appeal upon receipt of the settlement funds. *See* N.T. Hearing, 6/8/18, at 5 ("The appeal that's currently pending in the defamation lawsuit shall be discontinued **upon payment of all the settlement funds.**" (emphasis added)). However, this payment was similarly premised upon the execution of a written release. *Id*. at 3. Thus, the parties have created a contractual "catch-22" by which their inability to agree upon the terms of the written release prevented further performance. Now that the appeal can no longer be withdrawn by Chasan, future performance by either party seems impossible. Furthermore, the record clearly evinces negotiations have stalled.

With neither party willing to give ground and performance of the covenant undermined, the appropriate remedy is to set the Settlement Agreement aside and remand for trial. *See Koken*, *supra* at 537 (holding that where "ambiguities and undetermined matters" render a settlement agreement "impossible to understand and enforce," the agreement should be set aside in favor of a trial on the merits).

For all the reasons stated above, I respectfully dissent.